**In re COMBUSTION EQUIPMENT ASSOCIATES, INC., Debtor.**

**CARTER DAY INDUSTRIES, INC., f/k/a Combustion Equipment Associates, Inc., Plaintiff,**

**v.**

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and New Jersey Department of Environmental Protection, Defendants.**

Bankruptcy No. 80 B 11757(BRL).

No. 86 Civ. 5816(LBS).

Adv. No. 86–5433A.

United States District Court, S.D. New York.

April 27, 1987.

Anderson Russell Kill & Olick, P.C., New York City, for plaintiff; Roy Babitt, Arthur S. Olick, Warren R. Graham, of counsel.

Rudolph W. Giuliani, U.S. Atty. for S.D. New York City, for defendants; Mary Ellen Kris, Alan Nisselson, Asst. U.S. Attys., Elizabeth Yu (Environmental Enforcement Section), Washington, D.C., of counsel.

## OPINION

SAND, District Judge.

The United States Environmental Protection Agency ("EPA") moves for summary judgment dismissing plaintiff Carter Day's declaratory judgment action upon the ground that the issue raised therein is not ripe for judicial determination. In the underlying action, Carter Day seeks declaratory and injunctive relief. Plaintiff contends that its discharge in bankruptcy pursuant to 11 U.S.C. §§ 524 and 1141 (1979 & West Supp.1987) has also discharged any potential liability that Carter Day may have under section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C.A. § 9607(a) (West Supp.1987), in connection with two landfill sites. For the reasons stated in this Opinion, EPA's motion is granted.

We set forth the facts underlying this litigation in our Opinion dated November 24, 1986, 67 B.R. 709 (S.D.N.Y.), in which we withdrew the reference made earlier to the Bankruptcy Court. We need not repeat them here save to highlight those facts relevant to the instant motion: Combe Fill Corporation, a wholly owned subsidiary of Carter Day, operated two landfill sites in Morris County, New Jersey, until their closure in 1981. EPA had listed these sites on its National Priority List of hazardous waste sites after finding groundwater in the vicinity contaminated with a variety of hazardous substances. In 1983, EPA advised Carter Day as well as at least 190 others that they were potentially responsible parties ("PRPs") under CERCLA for the costs of remedial action which might be incurred by EPA in connection with the hazardous sites. EPA has since funded a Remedial Investigation and Feasibility Study ("RI/FS") at each site in order to identify appropriate remedial strategies.

Carter Day's voluntary petition for Chapter 11 bankruptcy was confirmed in December 1983. After that date, EPA incurred the majority of costs associated with the RI/FS. EPA has made no other expenditures for cleaning up the Morris County sites and has not made a decision to take enforcement action against Carter Day, or for that matter, against any particular PRP. The crux of plaintiff Carter Day's contention in this litigation is that any *potential* liability that Carter Day may have for cleanup at the sites arose before its

Chapter 11 confirmation and therefore is barred by virtue of Carter Day's debtor status: the confirmation of a Chapter 11 plan discharges the corporate debtor from debts that arose before, but not after the date of confirmation. 11 U.S.C. § 1141(d)(1)(A). EPA contends, however, that the Court cannot reach the merits of plaintiff's claim.

EPA persuasively argues that this Court lacks subject matter jurisdiction over Carter Day's action since it is not a case or controversy ripe for judicial resolution. *See, e.g., Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). The ripeness doctrine in the administrative context—to which we will confine ourselves— serves in part "to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In determining whether an issue is ripe, courts evaluate both the fitness of the issue for review and the hardship to the parties of withholding court consideration. *Id.* at 149, 87 S.Ct. at 1515–16. Specifically, this Court must determine whether there has been final and definitive agency action by EPA having a direct and immediate impact upon Carter Day. *Id.* at 149–52, 87 S.Ct. at 1515–17; *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 239, 101 S.Ct. 488, 493, 66 L.Ed.2d 416 (1980).

We first address whether EPA has taken "final" agency action. *See, e.g., Abbott Laboratories*, 387 U.S. at 149–51, 87 S.Ct. at 1515–17; 5 U.S.C. § 704 (1982). The Supreme Court in *FTC v. Standard Oil Co. of California*, 449 U.S. at 240–43, 101 S.Ct. at 493–95, set forth a three part test to determine finality: (1) the agency action should be a definitive ruling or regulation; (2) the agency action should have legal force or practical effect upon the party seeking judicial review; and (3) judicial review should serve either efficiency or enforcement of the regulatory scheme. We find that .the agency action in this case meets none of these criteria.

First, far from being a "definitive" ruling by EPA that Carter Day was liable for cleanup costs, the letter sent to Carter Day as a PRP—the only action taken by EPA with respect to plaintiff—was purely a notice of potential responsibility and request for information that was sent to 190 other PRPs in addition to Carter Day. In this vein, the only "legal" requirement imposed by the letter was to require Carter Day to supply information to the agency; the notice in no way imposed liability or mandated Carter Day under either administrative or judicial order to undertake any remedial action or incur any cleanup costs. *Accord Lake Carriers' Ass'n. v. MacMullan*, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972) (declaratory judgment action by regulated party was ripe where state official sought compliance with state clean water statute and enforcement action merely threatened).

Furthermore, "regulatory efficiency"— the last requirement for finding final agency action—would not be promoted by allowing suit by Carter Day at this time. Before EPA would take enforcement action against Carter Day or any other PRP, the agency necessarily would perform steps that could make litigation involving Carter Day unnecessary. Specifically, EPA likely would develop remedial plans for the landfill sites and negotiate with PRPs for voluntary cleanup efforts, thereby negating the need for litigation. Moreover, EPA does not make determinations of legal liability prior to sending out PRP notice letters. Rather, EPA would undertake that review at a later time and refer the matter to the Justice Department for a final determination prior to instituting any enforcement or cost recovery action under sections 106 or 107 of the Act. 42 U.S.C.A. §§ 9606–07. According to EPA, PRPs currently number ten thousand spanning hundreds of waste sites across the United States. To allow PRPs to seek declaratory judgments of nonliability at this preliminary stage of EPA proceedings could dissipate agency resources through needless, extensive litigation and divert EPA from the effective pursuit of its mandate to

promptly clean up hazardous waste sites and recover costs. It is clear that EPA's actions thus far with respect to Carter Day do not constitute final agency action.

We next determine whether EPA's actions have had a "direct and immediate" impact upon plaintiff. *See Abbott Laboratories,* 387 U.S. at 152–53, 87 S.Ct. at 1517–18; *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 81, 98 S.Ct. 2620, 2634–35, 57 L.Ed.2d 595 (1978). As we have stated, Carter Day was required by the CERCLA notice letter to do nothing more than supply information to EPA. This burden is a far cry from the costly actions of changing labels and advertisements or risking prosecution required of the plaintiff drug company by the agency in *Abbott Laboratories,* actions the Court recognized as having a sufficiently direct impact on the plaintiff to create an issue ripe for judicial review. 387 U.S. at 152–53, 87 S.Ct. at 1517–18. Conversely, in the instant case, it cannot be said that EPA's action "require[d] an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance...." 387 U.S. at 153, 87 S.Ct. at 1518.

Our finding, under applicable Supreme Court precedent, that Carter Day's complaint is not ripe for judicial review comports with the views of two other district courts, each holding in cases involving CERCLA notice letters, that actions seeking declaratory relief prior to judicial enforcement are not ripe. *See Pacific Resins and Chemicals, Inc. v. United States,* 654 F.Supp. 249 (W.D.Wash.1986); *D'Imperio v. United States,* 575 F.Supp. 248 (D.N.J. 1983). Similarly, courts including the Second Circuit have prohibited pre-enforcement judicial review under CERCLA in other circumstances. For instance, in *Wagner Seed Co. v. Daggett,* 800 F.2d 310 (2d Cir. 1986), the court prohibited pre-enforcement review of plaintiff's "Act of God" defense to CERCLA liability for a chemical spill, even though—unlike this case—EPA had made an administrative determination of liability and had imposed a cleanup order imposing fines and penalties for noncompliance. *See also, e.g., Wheaton Industries v. United States Environmental Protection Agency,* 781 F.2d 354 (3rd Cir.1986) (CERCLA does not allow judicial review prior to cost recovery action where plaintiff sought to conduct RI/FS); *J.V. Peters & Co., Inc. v. Administrator, Environmental Protection Agency,* 767 F.2d 263 (6th Cir.1985) (response action by EPA was not final agency action subject to judicial review prior to agency cost recovery action). EPA has not initiated an adjudication regarding Carter Day's potential CERCLA liability, let alone made any determinative administrative ruling. Hence, the Court lacks subject matter jurisdiction over plaintiff's claim. The impact of Carter Day's bankruptcy status on what is now EPA's hypothetical cost recovery effort can be determined adequately if and when EPA ultimately seeks such enforcement.

Accordingly, Carter Day's complaint is dismissed without prejudice to refiling should the issues therein become ripe for review.

SO ORDERED.