AMERICAN TELEPHONE & TELEGRAPH COMPANY, AT & T Technologies, Inc., and AT & T Information Systems, Inc., for themselves and their direct and indirect affiliates and subsidiaries, Plaintiffs,

v.

CHATEAUGAY CORPORATION, Reomar, Inc., the LTV Corporation, et al., Defendants.

No. 87 Civ. 8160 (RWS).

United States District Court,
S.D. New York.

April 22, 1988.

Kronish, Lieb, Weiner & Hellman, New York City, Spencer, Fane, Britt & Browne,

Kansas City, Mo., for plaintiffs; Richard Lieb, William J. Rochelle, III, Martha J. Rix, Courtney Linn Slatten, James T. Price, Bonnie Jean Peter, Terry A. Thompson, of counsel.

Levin & Weintraub & Crames, New York City, for defendants; Michael J. Crames, Herbert Stephen Edelman, David T. Anderson, of counsel.

Davis Polk & Wardwell, New York City, for defendants; Karen E. Wagner, Sharon Katz, of counsel.

## OPINION

SWEET, District Judge.

Plaintiffs American Telephone and Telegraph Company, AT & T Technologies, Inc. and AT & T Information Systems Inc., for themselves and their direct and indirect affiliates and subsidiaries (collectively "AT & T") have moved for an order pursuant to 28 U.S.C. § 157(d) and Bankruptcy Rule 5011 withdrawing the reference of an adversary proceeding commenced by AT & T against the LTV Corporation ("LTV") by service of a summons and complaint (the "AT & T Complaint") filed in the United States Bankruptcy Court on November 13, 1987. For the reasons set forth below, the motion for withdrawal is granted.

*Background*

On July 17, 1986 LTV and affiliated debtors filed in the United States Bankruptcy Court for this District petitions for reorganization under Chapter 11 of the Bankruptcy Code. On July 31, 1987 the Bankruptcy Court entered a bar order, upon ninety days notice, setting November 30, 1987 as the last day for the filing of claims in the LTV cases. AT & T did not appeal from the bar order or move to amend or modify it. No party has obtained any extension of the bar date. In connection with the instant motion, AT & T sought to have the bar date extended pending disposition of this motion. This request was denied on November 25, 1987. Thereafter, AT & T filed a "protective" proof of claim, with a full reservation of rights.

LTV is a holding company whose subsidiaries include the second largest domestic steel company and a major aerospace and defense company. Over a period of years, LTV and certain of its subsidiaries, including Republic Steel Corporation and Jones & Laughlin Steel Corporation, have allegedly generated unknown amounts of certain hazardous substances that were transported to storage or disposal sites operated by third parties. Thus, in addition to the billions of dollars in claims that have been asserted against LTV so far, it is anticipated that federal and state agencies may in the future assert substantial claims relating to environmental liabilities against LTV. Such claims may arise from one of the twelve sites in which LTV or a subsidiary has already been named a "Potentially Responsible Party." For example, on November 22, 1985 the United States Environmental Protection Agency ("EPA") issued an order to approximately twenty respondents, including AT & T and the LTV affiliates Republic Steel and Jones & Laughlin Steel, alleging that a hazardous waste disposal facility operated by Conservation Chemical Company of Illinois in Gary, Indiana (the "CCC Facility") required certain response actions, including the removal and proper disposal of hazardous substances. To date, however, the EPA has not commenced any civil action with respect to the CCC Facility to recover fines or costs under § 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607(a) (1988 Supp.).

Under that section, any party who arranged to have hazardous substances that it owned or produced transported for disposal or treatment at a facility (a "Potentially Responsible Party") may be charged with full liability for the entire cost of removal or remedial action undertaken by the EPA with respect to that facility. In the event that any one Potentially Responsible Party is held liable, § 113(f) of CERCLA, 42 U.S.C. § 9613(f) (1988 Supp.), provides that party with a statutory right of contribution for recovery from any other Potentially Responsible Party. Because AT & T and numerous other parties may

have generated hazardous substances that may have been transported to sites also used for the storage or disposal of LTV's hazardous substances, it is possible that certain Potentially Responsible Parties will assert claims for contribution against LTV in the future.

On November 6, 1987 the United States on behalf of the EPA filed in the Bankruptcy Court a "Complaint for Declaratory Relief Relating to Non-Dischargeability of Future Environmental Costs and Enforcement Actions" against LTV. On November 9, 1987 the EPA moved to withdraw its complaint from the bankruptcy court. LTV opposed the motion. After hearing oral argument on the motion to withdraw on March 11, 1988, the Honorable John E. Sprizzo, by order dated April 1, 1988, granted the EPA's motion and withdrew its declaratory judgment complaint from the bankruptcy court. A hearing on the EPA complaint has been scheduled for September 1988. Judge Sprizzo declined to accept the instant motion as a related matter under Rule 15 of the Rules for the Division of Business Among District Judges for the Southern District.

Both complaints seek a declaratory judgment that potential contribution and cost recovery claims against LTV for environmental liability arising out of LTV's pre-petition conduct are not "claims" within the meaning of § 101(4) of the Bankruptcy Code, are not subject to discharge under § 1141 of the Bankruptcy Code, or are to be accorded administrative priority status under § 503 of the Bankruptcy Code.

*Mandatory Withdrawal Under § 157(d)*

In *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 785 (1982), the Supreme Court held unconstitutional the broad grant of authority given to bankruptcy courts under the Bankruptcy Reform Act of 1978 to hear and determine all civil proceedings arising under or related to Title 11. Conceding Congress's authority to assign judicial power over federally created rights to non-article III courts, the Court held that rights created under state law were subject to federal jurisdiction only as mandated by the Constitution. *Northern Pipeline*, 458 U.S. at 83–84, 102 S.Ct. at 2877–78 (Opinion of Brennan, J.), 91 (Rehnquist, J., concurring). Thus, the Court concluded that the Bankruptcy Act of 1978 had impermissibly placed article III jurisdiction in a non-article III court. *Id.* at 87, 102 S.Ct. at 2877.

In response to *Northern Pipeline*, Congress passed the Bankruptcy Amendments and Federal Judgeship Act of 1984, which divided the jurisdiction of the bankruptcy courts into "core" and "non-core" proceedings. *See* 28 U.S.C. § 157(b) (1987 Supp.). While § 157(b)'s distinction between "core" and "non-core" proceedings was intended primarily to correct the constitutional defect expressed in *Northern Pipeline*, the 1984 Act also addresses a jurisdictional problem that arises when the resolution of a given proceeding in a bankruptcy case requires consideration of non-bankruptcy federal laws. Thus, § 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (1987 Supp.). Section 157(d) reflects Congress's perception that specialized courts should be limited in their control over matters outside their areas of expertise. This provision also assures litigants that under certain circumstances their assertion of a federally created right will be considered outside the narrow confines of a bankruptcy court proceeding by a district court, which considers laws regulating interstate commerce on a daily basis and are "better equipped to determine them than are bankruptcy judges." 1 *Collier on Bankruptcy* ¶ 3.01 at 3–53 (15th ed. 1986); *see also* 1 *Norton Bankruptcy Law and Practice* § 5.10 (1987) ("In that class of cases involving the Bankruptcy Code

and another federal statute the debtor or nondebtor party is entitled to require the case to be withdrawn to the District Court.").

In *Pension Benefit Guaranty Corp. v. The LTV Corp.*, 86 B.R. 33 (1987), this court recently considered the standards for mandatory withdrawal under § 157(d):

> The test for mandatory withdrawal under § 157(d) has been narrowly defined. Recognizing that a literal application of Section 157(d) could open a broad "escape hatch through which most bankruptcy matters [could] be removed to a district court," 130 Cong.Rec. H1850 (daily ed. Mar. 21, 1984) (Statement of Rep. Kramer), the district courts of this Circuit have followed the test announced by the District Court for the Northern District of Ohio in *In re White Motor Corp.*, 42 B.R. 693, 703, 705 (N.D.Ohio 1984): withdrawal is mandatory only when "substantial and material consideration" of non-Code federal statutes "is necessary for the *resolution* of a case or proceeding." *See In re Johns–Manville Corp.*, 63 B.R. 600 (S.D.N.Y.1986); *In re Combustion Equipment Assoc., Inc.*, 67 B.R. 709 (S.D.N.Y.1986).... Withdrawal is not mandatory in cases that require only the "straightforward application of a federal statute to a particular set of facts;" rather, mandatory withdrawal should be exercised only for "issues requiring significant *interpretation* of federal laws that Congress would have intended to have decided by a district judge rather than a bankruptcy judge." *In re Johns–Manville Corp.*, 63 B.R. at 602. In such cases, a district court does not have discretion to deny a petition for withdrawal. *See In re Combustion Equipment Assoc., Inc.*, 67 B.R. at 711.

*PBGC v. LTV*, at 36–37.

While under *PBGC, Johns–Manville* and *Combustion Equipment*, the principles governing mandatory withdrawal are becoming well-settled, their application to the particular circumstances of a given case requires that the court choose between two legitimate competing concerns. On the one hand, a debtor like LTV, submerged in the complexities of a multi-billion dollar bankruptcy case, will often prefer to have all proceedings that may affect its plan of reorganization resolved before a single court familiar with the broad outlines of the debtor's bankruptcy. On the other hand, a party, like AT & T, asserting an interest in the debtor that depends on a federal law potentially at odds with the Bankruptcy Code will prefer to have its interest resolved in what it perceives to be the more balanced, or neutral, adjudicatory environment of the district court. Here both parties agree with the "substantial and material" standard, but disagree whether it is met on these facts. As the Honorable Pierre N. Leval observed in *Johns–Manville*, "[p]recisely where the substantial and material line falls is open to dispute." *In re Johns–Manville*, 63 B.R. at 602.

Distinct from the private interests at stake in a withdrawal motion, however, are the difficult jurisdictional issues that appear whenever evolving national values embodied in a comparatively young federal statute clash with the historically accepted and well-settled values set forth in the Bankruptcy Code. In the withdrawal motion at issue in *PBGC v. LTV*, this court concluded that such a conflict between the Bankruptcy Code and the Employee Retirement Income Security Act ("ERISA") required withdrawal from the bankruptcy court. Similarly, in two cases raising environmental law issues under CERCLA similar to those in the AT & T Complaint, the Honorable Leonard B. Sand and the Honorable Pierre N. Leval concluded that withdrawal was necessary. *See In re Combustion Equipment Assocs., Inc.*, 67 B.R. 709; *In re Johns–Manville Corp.*, 63 B.R. 600.

The issue in both *Combustion Equipment* and *Johns–Manville* was whether § 157(d) mandates withdrawal of a proceeding in which a court must determine whether a claim has arisen under CERCLA as of a specific date and, consequently, whether a "claim" exists under section 101(4) of the Bankruptcy Code. In *Johns–Manville*, the EPA sued a party, Boston & Maine, which shared joint and several responsibility under CERCLA with the debtor, Johns–Man-

ville, for costs expended by the EPA to clean up a hazardous waste site. Thereafter, the EPA and Boston & Marine brought separate adversary proceedings against Johns–Manville in the bankruptcy court seeking a determination of whether and when their respective claims arose. In connection with the plaintiffs' motions for withdrawal, Judge Leval observed that "CERCLA is a statute 'rooted in the commerce clause' and is precisely 'the type of law[ ] Congress had in mind when it enacted the statutory withdrawal provision.'" *In re Johns–Manville*, 63 B.R. at 602 (citing *United States v. ILCO, Inc.*, 48 B.R. 1016, 1021 (N.D.Ala.1985) (withdrawing government's CERCLA cause of action in accordance with § 157(d))). Finding that the adversary proceedings raised questions that required "significant interpretation of the CERCLA statute ... [and] assessment of the relationship of such CERCLA claims to ... the Bankruptcy Code," the Court held:

> It ... seems quite clear that this controversy falls within the category of cases mandatorily withdrawn from the Bankruptcy court's jurisdiction by § 157(d), in that it "requires consideration of both title 11 and other laws of the United States regulating ... interstate commerce."

*In re Johns–Manville Corp.*, 63 B.R. at 603 (citing *Maislin Indus. v. C.J. Van Houten E Zoon Inc.*, 50 B.R. 943, 948 (E.D.Mich. 1985)). The Court rejected the debtor's assertion that a CERCLA claim for contribution involved only a state law claim, and, thus, was not within the ambit of § 157(d), stating: "This contention is not substantial. Rights of contribution ... under federally created causes of action have repeatedly been held to the question of federal law." *Id.* (citations omitted).

In *Combustion Equipment*, Judge Sand confronted a similar CERCLA issue in a slightly different context. In that case, the debtor, Carter Day Industries, Inc., sued the EPA in bankruptcy court seeking a declaration that its discharge in bankruptcy more than two years earlier also discharged it from any potential liability under CERCLA for contamination of two landfill sites. The Court noted:

> The question whether any claims against Carter Day [predecessor to the debtor] may be asserted under CERCLA depends on when such claims are deemed to have arisen. The confirmation of a plan in Chapter 11 discharges the corporate debtor from any claim that arose before, but not after the date of such confirmation.

*In re Combustion Equipment Assocs., Inc.*, 67 B.R. at 710. At the time Carter Day filed its complaint, the EPA had not taken any action against Carter Day or any other potentially responsible party, had not determined whether Carter Day or any other potentially responsible party was liable for recovery costs, and, in fact, had not decided whether enforcement action would be necessary at all. However, the EPA had specifically identified sites from which liability might arise. Finding that when a CERCLA claim is deemed to have arisen and when such a claim becomes a § 101(4) "claim" in bankruptcy was virtually indistinguishable from the issue presented in *Johns–Manville*, Judge Sand held that withdrawal was mandatory, stating "resolution of this proceeding requires substantial and material consideration of CERCLA ... in tandem with consideration of the Bankruptcy Code." *Id.* at 713.

Following the withdrawal of Carter Day's declaratory judgment complaint from the bankruptcy court, the EPA moved for summary judgment on the grounds that the issues raised by the complaint were not ripe for judicial determination. Because the EPA had neither initiated an adjudication regarding Carter Day's potential CERCLA liability nor made any determinative administrative ruling, Judge Sand held that under the ripeness doctrine as applied in the administrative context, *see Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967), Carter Day's complaint was not ripe for judicial review. *In re Combustion Equipment Assoc., Inc.*, 73 B.R. 85, 87–88 (S.D.N.Y.1987). Dismissing the complaint, Judge Sand concluded, "The impact of Carter Day's bankruptcy status on what is now EPA's hypothetical cost recovery ef-

fort can be determined if and when EPA ultimately seeks enforcement." *Id.* at 88.

On appeal, the Second Circuit affirmed Judge Sand's dismissal of the complaint. In its decision, however, the Court discussed at length the conflict between CERCLA and the Bankruptcy Code presented by Carter Day's complaint:

> The underlying issues in this case involve a conflict between two important national policies reflected in two statutes: the Bankruptcy Code and CERCLA. The conflict begins at a basic level, since the goal of CERCLA—cleaning up toxic waste sites promptly and holding liable those responsible for the pollution—is at odds with the premise of bankruptcy, which is to allow debtors a fresh start by freeing them of liability.

*In re Combustion Equipment Associates, Inc.*, 838 F.2d 35, 37 (2d Cir.1988). The Court of Appeals focused on the issues that exist under CERCLA as to the time when a claim arises:

> If the law turned out to be that CERCLA liability is not a claim until the EPA seeks enforcement, then whether that liability had been discharged would be primarily a legal issue, .... On the other hand, we think that if the law is otherwise, significant factual issues will need to be addressed.

*Id.* at 39. The Court's discussion of several other possibilities as to "when a CERCLA claim accrues" and when a "CERCLA liability becomes a claim" provides substantial support for AT & T's claim that the law as to the time when a CERCLA claim arises is unresolved:

> In addition, depending on what the law turns out to be on when a CERCLA claim accrues (a matter on which we express no opinion), deciding various factual issues will interfere with Congress's policy of expediting cleanup. For example, if the law were that CERCLA liability becomes a claim in stages as the EPA incurs costs, there would be the obvious factual issues of which costs occurred at specific times. It is also possible that the courts will find that CERCLA liability does not mature into a claim in stages but accrues as a whole at some point between deposit of toxic waste and final cleanup. If so, the same sort of factual investigation may again be necessary to determine whether · and when such a point was reached. Either theory would require investigation of internal EPA ac-

tions and progress in evaluating the site, with consequent possible interference with the EPA's cleanup efforts.

*Id.* at 40. Thus, the Court's opinion leaves open the question of when a CERCLA claim arises.

If a CERCLA claim does not pre-exist confirmation, it would appear that it cannot be discharged upon confirmation of LTV's Chapter 11 plan. If a CERCLA claim should arise after confirmation of LTV's Chapter 11 plan, then like many liabilities that are incurred by Chapter 11 debtors for the first time after confirmation of their plans, a post-confirmation CERCLA liability must be performed by LTV. A debtor cannot hide behind confirmation of its plan to escape from liabilities that do not exist prior to confirmation. *See* 11 U.S.C. § 1141(d)(1). The present existence or non-existence of a CERCLA claim is, therefore, an important issue under the applicable federal statutes.

In opposition to the motion to withdraw, LTV contends that resolution of the issues raised in AT & T's Complaint requires consideration of the Bankruptcy Code alone. LTV interprets the AT & T Complaint as a request for rulings as to the status under the Bankruptcy Code of claims for post-confirmation response costs incurred by AT & T for which AT & T may seek contribution from LTV. Conceding for purposes of this motion that AT & T has claims under CERCLA which are at present unliquidated, contingent and unmatured, LTV argues that a determination of the status under the Bankruptcy Code of such unliquidated, contingent, unmatured contribution claims is controlled solely by the Bankruptcy Code. Thus, LTV contends, the AT & T Complaint does not raise any CERCLA issues.

Section 101(4) of the Bankruptcy Code defines "claim" as follows:

> (4) claim means—
>
> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(4) (1979). The legislative history of the definition demonstrates that Congress intended that a uniform, broad definition of "claim" be used in bankruptcy proceedings:

> By this broadest possible definition ... [the Bankruptcy Code] contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court.

H.R. 595, 95th Cong., 2d Sess. at 309, *reprinted in* [1978] U.S.Code Cong. & Ad. News 5963, 6266; *see also* S.R. 989, 95th Cong.2d Sess. at 21–22, *reprinted in* [1978] U.S.Code Cong. & Ad.News 5787, 5807–08.

By focusing on the Bankruptcy Code's expansive definition of the term "claim," LTV seeks to terminate debate as to the existence of a CERCLA claim—by conceding that one exists—and thereby foreclose the need to consider CERCLA in proceedings on the AT & T Complaint. AT & T, on the other hand, contends that LTV's argument begs the primary legal issue raised by the AT & T Complaint and acknowledged by the decisions in *Combustion Equipment* and *Johns–Manville* to be unresolved, namely, whether a claim under CERCLA exists at this time which AT & T must assert and pursue in the ongoing reorganization. AT & T contends (1) that it does not have a claim against LTV under CERCLA at this time and (2) that the existence of a CERCLA "claim" cannot be resolved without substantial and material consideration of CERCLA.

As the party opposing withdrawal, LTV has jumped to the merits in an attempt to show that the legal issues sought to be withdrawn are well-settled.[1] The court, however, declines LTV's invitation to resolve the AT & T Complaint on the merits at this stage of the proceedings. It suffices to note that in reviewing the district court's opinion in *Combustion Equipment,* the Second Circuit stated that the issue of when a CERCLA claim arises is an open question that will require analysis of the competing policies embodied in CERCLA and the Bankruptcy Code. The AT & T Complaint raises important issues of federal environmental policy, which can at times take precedence over seemingly contrary provisions of the Bankruptcy Code. *See Midlantic National Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 505–06, 106 S.Ct. 755, 761–62, 88 L.Ed.2d 859 (1986). Thus, it would be premature to reach the merits of the AT & T Complaint before the issues it presents have been fully briefed by both parties.

In addition to the primary issue of when AT & T's right to contribution under § 113(f) of CERCLA arises, several subsidiary issues may arise that will also require consideration of the statute. For example, although LTV contends that AT & T's causes of action are limited to a right of contribution under section 113(f) of CERCLA, under certain circumstances a private

---

**1.** In this regard, LTV contends that *Combustion Equipment* and *Johns–Manville* were wrongly decided in that Judge Sand and Judge Leval failed to consider the distinction between a "right to payment" for federal bankruptcy purposes and the accrual of a cause of action under state and federal law. Because the Bankruptcy Code broadly defines "claim" as a "right to payment" that is unliquidated, contingent, and unmatured, LTV argues that a "claim" can be recognized for bankruptcy purposes regardless of whether the actual cause of action may not accrue under state or federal law until some time in the future. Contrary to LTV's contention, Judge Sand expressly considered these issues and found that they were not well-settled:

> Although the bankruptcy code, 11 U.S.C. § 101(4) (West 1979), defines "claim" for purposes of bankruptcy law, the Code does not clearly establish when a right to payment arises. *In re M. Frenville Co., Inc.,* 744 F.2d 332, 337 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985). And as a general matter, there is debate over the law to be applied in determining when a

claim arises in the bankruptcy context. *Compare Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946) (determining which claims of creditors are valid at time of bankruptcy in absence of overruling federal law is to be determined by reference to state law); *In re M. Frenville Co., Inc.,* 744 F.2d at 337 (absent overriding federal law, when a right to payment arises is to be determined by reference to state law) *with, e.g., In re Baldwin–United Corp. Litigation,* 765 F.2d 343, 348 n. 4 (2d Cir.1985) ("We are not as certain as the District Court that, if we reached the issue, we would follow *Frenville....*"); *In re Johns–Manville Corp.,* 57 B.R. 680, 690 (S.D.N.Y. 1986) (refuses to follow *Frenville* because it "ignores congressional intent to define 'claim' broadly [in the Bankruptcy Code]").

*In re Combustion Equipment,* 67 B.R. at 712–13. Nothing in the Court of Appeals' affirmance of Judge Sand's subsequent opinion suggests that the issue of when a CERCLA claim arises can be decided with reference to the Bankruptcy Code alone.

party may also seek contribution or cost recovery under § 107(a)(4)(B) of CERCLA. *See, e.g., Sand Springs Home v. Interplastic Corp.,* 670 F.Supp. 913, 916 (N.D.Okla. 1987). Moreover, § 113(f) of CERCLA provides that the district court may allocate response costs among liable or partially liable parties "using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f) (1988 Supp.). The statute, however, is silent as to what "equitable factors" the court may properly consider and as to their relative weight. Some district courts have followed an EPA recommendation that the volume of waste should be the primary factor in allocating responsibility. *See, e.g., United States v. Ottati & Goss Inc.,* 24 Env't Rep.Cas. (BNA) 1152 (D.N.H.1986) [available on WESTLAW, 1986 WL 10264] (allocating liability for surface clean-up costs based upon volume); *see also* 52 Fed.Reg. 19,919, 19,- 920 (May 28, 1987) (containing EPA recommendation). Other district courts, however, have suggested that "the relative fault of liable parties ... will depend upon ... different factors such as volume, toxicity, migratory potential...." *See United States v. Conservation Chemical Co.,* 628 F.Supp. 391, 401 (W.D.Mo.1985).

"CERCLA is a complex and important statute without clarifying legislative history," *In re Johns–Manville,* 63 B.R. at 602, that was substantially modified by the Super Fund Amendments and Reauthorization Act of 1986, Pub.L. 99–499, Oct. 17, 1986. The statute is now the vehicle for potential claims asserted by AT & T and the federal government against LTV that may amount to millions of dollars in liability. Resolution of the issues presented by the AT & T Complaint will require significant interpretation of CERCLA and consideration of the ways in which the values of environmental preservation it was enacted to protect can be reconciled with the familiar concerns of the Bankruptcy Code. By enacting § 157(d), Congress determined that a district court of general federal jurisdiction shall be the forum for substantial and material conflicts between the Bankruptcy Code and other federal laws. Under the Court of Appeals' decision in *Combustion Equipment,* the AT & T Complaint presents such a conflict. Therefore, for the reasons set forth above, AT & T's motion to withdraw the reference is granted.

IT IS SO ORDERED.