### In re REVERE COPPER AND BRASS INCORPORATED, et al.

### REVERE COPPER AND BRASS, INC., and Revere Copper Products, Inc., Plaintiffs,

### v.

### ACUSHNET COMPANY, et al., Defendants.

No. 93 Civ. 8730 (LAP).
Bankruptcy Nos. 82 BA 12073 (BA) to 82 B 12086 (PA), 83 B 10791 (PA) and 83 B 11703 (PA).

United States District Court, S.D. New York.

Sept. 12, 1994.

---

Stephen H. Kaprelian, Tarrytown, NY, and Stephen Karotkin, Weil, Gotshal & Manges, New York City, for plaintiffs.

David M. Jones, Kirkpatrick & Lockhart, Boston, and Kenneth P. Coleman, Margaret M. Groarke, Chadbourne & Parke, New York City, for defendants.

## OPINION AND ORDER

PRESKA, District Judge:

ON RECONSIDERATION:

By Memorandum Order dated June 2, 1994, I granted defendants' motion to withdraw the reference of this adversary proceeding to the Bankruptcy Court. Plaintiffs subsequently filed a motion for reargument, pursuant to Local Rule 3(j), raising arguments that had not been previously considered.[1] Upon consideration of those arguments, I conclude that my June 2 Order was incorrect. Accordingly, that Order is vacated and superseded by the following.

### Background

On June 11, 1991, in a separate case, defendants entered into a Consent Decree with the United States and the Commonwealth of Massachusetts relating to the environmental cleanup of a site known as Sullivan's Ledge. The Consent Decree required defendants to pay a portion of the past costs incurred by the United States and the Commonwealth in responding to contamination at the site. Additionally, the Consent Decree obligated defendants to pay for and implement measures to prevent and remedy future releases of toxic materials.

Almost exactly two years later, on June 2, 1993, defendants commenced a suit against plaintiffs in the United States District Court for the District of Massachusetts. The suit alleges that plaintiffs contributed to the contamination of Sullivan's Ledge. The complaint seeks contribution toward defendants' costs of performing their Consent Decree obligations under sections 107 and 113 of the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), as amended (42 U.S.C. §§ 9607, 9613).[2]

Plaintiffs, in response, instigated the present adversary proceeding, seeking, *inter alia*, a declaratory judgment from the Bankruptcy Court that defendants' claims in the Massachusetts action are barred as having been discharged in the bankruptcy of plaintiffs' predecessors. Insofar as those claims all stem from conduct of the plaintiffs' predecessors occurring prior to the filing of the predecessors' Chapter 11 petitions in 1982, plaintiffs maintain, they are barred pursuant to 11 U.S.C. § 1141, as well as by the Confirmation Order in the predecessors' bankruptcy case.

Defendants, while acknowledging that plaintiffs' and plaintiffs' predecessors' active involvement with the Sullivan's Ledge site ceased long before the predecessors' Chapter 11 petitions were filed, challenge plaintiffs' position that this fact brings defendants' CERCLA claims within the group of claims discharged by Chapter 11. Defendants assert that their claims arose post-confirmation and are, therefore, unaffected by the prior bankruptcy. *See* 11 U.S.C. § 1141(d)(1)(A). At the very least, they say, the determination of when their claims accrued requires substantial consideration of CERCLA, which in turn requires that the matter be considered by the District Court rather than the Bankruptcy Court. Accordingly, defendants filed

---

1. Defendant takes the position that a Rule 3(j) motion may not be based on new arguments but only on controlling matters or decisions that have been overlooked by the Court. In general, that is true. *Weissman v. Fruchtman*, 124 F.R.D. 559, 560 (S.D.N.Y.1989). However, "[i]f a court believes a prior ruling to be incorrect, the only just and sensible course is to change the prior ruling and proceed with the litigation." *Feigenbaum v. Marble of American, Inc.*, 735 F.Supp. 79, 80–81 (S.D.N.Y.1990).

2. Section 107 of CERCLA (42 U.S.C. § 9607) imposes liability on one who has caused certain hazardous materials to be disposed or treated at a particular site for necessary costs incurred by another party in cleaning up that site. Section 113 of CERCLA (42 U.S.C. § 9613) makes clear that one held liable under Section 107 may seek contribution from others also responsible for contaminating the site.

the instant motion for a withdrawal of the reference.

## Discussion

### A. Is Defendants' Motion Premature?

■ As their first argument in opposition, plaintiffs urge that the Court should decline to reach the merits of defendants' motion and instead deny it as premature. Currently pending before the Bankruptcy Court, plaintiffs observe, are fully submitted motions, filed by the defendants, to dismiss the adversary proceeding for lack of subject matter jurisdiction and to transfer venue to Massachusetts. An affirmative decision on either of those motions will moot defendants' current § 157(d) motion, plaintiffs argue, so this Court should not expend its resources considering the § 157(d) motion until such time as it becomes clear that a decision on that motion is required. Additionally, plaintiffs argue, since defendants' dismissal and transfer motions were filed in lieu of an answer in the adversary proceeding, issue on the merits of plaintiffs' complaint has not yet been joined and any § 157(d) motion is not yet ripe.

■ These arguments, while not entirely without force, do not persuade the Court that it should refrain from considering the merits of defendants' motion. First of all, although plaintiffs are obviously correct that an affirmative decision on the dismissal motion pending in the Bankruptcy Court would moot the § 157(d) motion presently here, plaintiffs also convincingly demonstrate that the dismissal motion is without substantial merit and is likely to be denied. See Plaintiffs' Sur–Reply Memorandum in Opposition to

Defendants' Motion to Withdraw Reference at 3–6.[3] There is little logic to plaintiffs' suggested course of rejecting the § 157(d) motion and requiring the Bankruptcy Court to consider the dismissal motion, when the likely result of that plan will simply be that this Court has to consider the same § 157(d) motion several months down the road. Judicial economy is not thereby served.

■ Nor is judicial economy served by deferring on the § 157(d) motion in favor of the venue motion pending before the Bankruptcy Court. Although a decision by the Bankruptcy Court to transfer the adversary proceeding to Massachusetts would relieve this Court of the obligation to consider the § 157(d) motion, the motion would then have to be heard by the District Court in Massachusetts. Thus, judicial resources would not be saved; they would just be expended elsewhere.

■ Finally, defendants' argument that the § 157(d) motion is premature because issue has not been joined is more semantics than substance. Plaintiffs' complaint alleges that defendants' CERCLA claims were discharged in bankruptcy. Although defendants have not yet filed their answer, it is clear that when they do, their position will be that their claims were not discharged (to take any other position would be to concede the case). At that point, issue will be formally joined and there will be no way to avoid consideration of a motion to withdraw the reference. Plaintiffs having posed the issue, and the issue being certain to be joined,[4] the Court elects not to wait for the inevitable.

3. As plaintiffs point out, because their complaint is predicated on 11 U.S.C. § 1141, which provides for a pervasive discharge of claims in Chapter 11 cases, it is clearly within the District Court's jurisdiction. See 28 U.S.C. § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11...."); Manville Corporation v. United States, 139 B.R. 97 (S.D.N.Y.1992) (complaint seeking declaratory judgment that CERCLA claims had been discharged in bankruptcy arose out of title 11). It is also, therefore, within the Bankruptcy Court's jurisdiction, because under 28 U.S.C. § 157(a), the Bankruptcy Court's jurisdiction parallels that of the District Court.

4. In this sense, the present case is different from In re Revere Copper and Brass, Inc., 1984–2 Trade Cas. ¶ 66,202, 1984 WL 857 (S.D.N.Y.1984), cited by plaintiffs. There, Judge Keenan found premature a motion to withdraw the movant's claim from the Bankruptcy Court where no objection to the claim had been filed and there was a possibility that no such objection would ever be filed. Here, defendants are sure to oppose plaintiffs' complaint, on grounds necessitating consideration of a motion to withdraw reference. There is no sense in waiting for an answer to be formally filed.

## B. Should Defendants' Motion be Granted?

■ The standard for withdrawal of a reference to the Bankruptcy Court is contained in § 157(d), which provides:

The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Recognizing that this section, read literally, would allow for a wholesale exodus of cases from bankruptcy courts, courts have interpreted it to require withdrawal of reference only when " 'substantial and material consideration' of federal statutes other than the Bankruptcy Code 'is necessary for the resolution of a case or proceeding.' " *In re Combustion Equipment Associates, Inc.*, 67 B.R. 709, 711 (S.D.N.Y.1986) (citing *In re White Motor Corp.*, 42 B.R. 693, 703, 704 (N.D.Ohio 1984)). Where a case does not require significant interpretation or construction of any non-bankruptcy statute, but merely requires the straightforward application of such a statute to a particular set of facts, courts have held that withdrawal to the District Court is not required. *See In re Adelphi Institute, Inc.*, 112 B.R. 534, 536 (S.D.N.Y. 1990).

This Court has had several occasions to apply § 157(d), as glossed by the judiciary, to cases where, like this one, the question asserted to require withdrawal was when a CERCLA claim accrued. In every instance, this Court has found that answering that question required substantial and material interpretation of CERCLA and, therefore, required that the proceeding be heard in the District Court. *See American Telephone & Telegraph Co. v. Chateaugay Corp.*, 88 B.R. 581 (S.D.N.Y.1988); *In re Combustion Equipment Associates, Inc., supra; In re Johns–Manville Corp.*, 63 B.R. 600 (S.D.N.Y. 1986).

Plaintiffs argue that all of these precedents have been superseded by *In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir.1991), wherein the Court of Appeals held, *inter alia,* that CERCLA response costs claims asserted by the United States Environmental Protection Agency (EPA) against a Chapter 11 debtor were pre-petition claims so long as the claimed costs were attributable to pre-petition releases or threatened releases of hazardous substances. *Id.* at 1005. On both the original submission of this motion and on reconsideration, *Chateaugay* has formed the heart of plaintiffs' opposition to withdrawal. The arguments drawn from the case, however, have varied.

In their initial briefs, plaintiffs argued that *Chateaugay* eliminated the need for substantial consideration of CERCLA in deciding when claims under that statute arose by establishing a broadly-applicable rule that such claims accrue at the time of the release or threatened release of toxic material. Bankruptcy courts faced with time-of-accrual questions could now simply apply this straightforward standard, plaintiffs maintained, so mandatory withdrawal of such cases was no longer required.

For the reasons set forth in my June 2, 1994 Order, this argument is unavailing. Briefly, the *Chateaugay* court's heavy emphasis upon the EPA's role as an environmental regulatory agency undermines the assumption that the rule announced in the case should be applied to CERCLA claims asserted by private parties as well. Although further analysis might well reveal that the *Chateaugay* rule should apply across the board, *see AM International, Inc. v. Datacard Corp.*, 146 B.R. 391 (N.D.Ill.1992), that conclusion is not so self-evident from the case itself that no further legal analysis is required.

■ On reconsideration, plaintiffs advance a different argument from *Chateaugay.* Assuming, they say, that the case leaves open the issue of when private parties' CERCLA claims accrue, it does make clear that the question is governed primarily by bankruptcy law and requires no substantial consideration of CERCLA. Accordingly, cases presenting time-of-accrual issues are fully within the competence of bankruptcy courts and

need not be withdrawn under § 157(d). Unlike plaintiffs' initial contention, this argument has merit.

As noted above, this Court has on numerous occasions held that the issue of when CERCLA claims accrue requires substantial consideration of CERCLA by the district court. In each of those cases, the court noted the conflict between CERCLA's policy of comprehensive environmental cleanup and the Bankruptcy Code's scheme of broad discharge.[5] *American Telephone & Telegraph Co.*, 88 B.R. at 587 ("The AT & T Complaint raises important issues of federal environmental policy which can at times take precedence over seemingly contrary provisions of the Bankruptcy Code"); *In re Combustion Equipment Associates, Inc.*, 67 B.R. at 713 ("[T]he determination [of when a CERCLA claim accrues] ... is an important question with economic and environmental ramifications reaching beyond the bankruptcy arena ..."); *In re Johns–Manville*, 63 B.R. at 602 ("The question for adjudication in these adversary proceedings requires not only ... significant interpretation of the CERCLA statute, but, in addition, assessment of the relationship of such CERCLA claims to the automatic stay arising under § 362(a)(1) of the Bankruptcy Code"). Settlement of the conflict, the courts reasoned, demanded a balancing of the statutes' competing objectives, which, under § 157(d), was required to be performed by a district court judge.

In *Chateaugay*, the Court of Appeals rejected the notion that such a balancing was required to answer the time-of-accrual question. Indeed, the Court held, that exercise was not only unnecessary but improper. Acknowledging that "the Bankruptcy Code and CERCLA point toward competing objectives," the Court went on to say that

> to whatever extent the Code and CERCLA point in different directions, we do not face in this context a conflict between two statutes, each designed to focus on a discrete problem, which happen to conflict in their application to a specific set of facts. [citation omitted] Here, we encounter a bankruptcy statute that is intended to override many provisions of law that would otherwise apply in the absence of bankruptcy.... If the Code, fairly construed, creates limits on the extent of environmental cleanup efforts, the remedy is for Congress to make exceptions to the Code to achieve other objectives that Congress chooses to reach, rather than for courts to restrict the meaning of across-the-board legislation like a bankruptcy law in order to promote objectives evident in more focused statutes.

944 F.2d at 1002.

The clear meaning of this language is that the issue of when a CERCLA claim arises is a matter of bankruptcy law, to be determined by courts without reference to the policy concerns embodied in the CERCLA statute. One need look no further than the remainder of the *Chateaugay* opinion to confirm this understanding of the case. For in deciding the status of the EPA's CERCLA claims, the *Chateaugay* court did not engage in a dissection of the CERCLA statute or its objectives.[6] Rather, the Court focused on the definition of "claim," as used in the Bankruptcy Code, to determine whether, as a matter of fact and bankruptcy law, the EPA's claims were sufficiently mature prior to the filing of its adversary's Chapter 11 petition to give rise to a claim within the meaning of the code.[7] 944 F.2d at 1002–05. *See also AM*

---

5. The Court of Appeals has also recognized the tension between the two statutes, noting
   [t]he conflict begins at a basic level, since the goal of CERCLA—cleaning up toxic waste sites promptly and holding liable those responsible for the pollution—is at odds with the premise of bankruptcy, which is to allow a debtors a fresh start by freeing them from liability.
   *In re Combustion Equipment Associates, Inc.*, 838 F.2d 35, 37 (2d Cir.1988).

6. At one point, the Court did observe that its rejection of the EPA's position might not have a negative effect on CERCLA enforcement. 944 F.2d at 1005. It is clear from the opinion, however, that this consideration was not a significant factor in the Court's decision; rather, it seems to have been referenced for additional support.

7. The only substantial discussion of CERCLA itself concerned whether or not any provision of the statute overrode the Code's definition of "claim" as applied to the case. The Court concluded none did. 944 F.2d 1005–06.

*International, Inc.,* 146 B.R. at 403–409 (performing same analysis). This is an inquiry which bankruptcy courts make as a matter of course and does not require intervention by the district court. *E.g. In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 979 (Bankr.S.D.N.Y.), *aff'd,* 158 B.R. 30 (S.D.N.Y.1993); *In re New York Trap Rock Corp.,* 137 B.R. 568 (Bankr.S.D.N.Y.1992). *Cf. Johnson v. Home State Bank,* 501 U.S. 78, 81–83, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991) (holding that question of whether an interest is a claim for bankruptcy purposes is "to be resolved by reference to 'the text, history, and purpose' of the Bankruptcy Code.' ").

In light of *Chateaugay,* the conclusion must be that the question of whether defendants' CERCLA claims arose prior to or after the filing of the defendants Chapter 11 petition is primarily a bankruptcy matter, fully capable of being resolved by the bankruptcy court and not requiring withdrawal of the reference.

### *Conclusion*

The Court's Order of June 2, 1994 is VACATED.

Defendants' motion for withdrawal of the reference is DENIED.