**WAGNER SEED COMPANY (a subsidiary of Wagner Brothers Feed Corp.), Plaintiff-Appellant,**

v.

**Christopher J. DAGGETT, as Regional Administrator of the U.S. Environmental Protection Agency, Region II, and the U.S. Environmental Protection Agency, Defendants-Appellees.**

No. 1164, Docket 86–6032.

United States Court of Appeals, Second Circuit.

Argued April 16, 1986.

Decided Sept. 10, 1986.

Frank L. Amoroso, Garden City, N.Y. (Rivkin, Radler, Dunne & Bayh, Garden City, N.Y., of counsel), for plaintiff-appellant.

Janice Siegel, Asst. U.S. Atty., Brooklyn, N.Y. (Robert L. Begleiter, Asst. U.S. Atty., Reena Raggi, U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for defendants-appellees.

Before KAUFMAN, TIMBERS and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

This litigation began when a bolt of lightning struck appellant's warehouse on Long Island, New York. During the ensuing fire-fighting efforts toxic chemicals stored in the warehouse spilled into the surrounding neighborhood. Appellant asserts that an administrative order directing it to clean up the toxic spill promptly placed it on the horns of a dilemma. To comply would be costly without the possibility of reimbursement from another responsible party; to refuse to comply would subject it to heavy fines. Because appellant believes that the lightning as an act of God provides it with a complete defense to the administrative order, it commenced the instant litigation and, having obtained no relief in the district court, brought this appeal asking us to review that defense *de novo* and issue an injunction staying the order. Doubtless appellant thinks itself caught between the devil and the deep blue sea, but as the following analysis will demonstrate, such is not the case.

Appellant, Wagner Seed Co. (Wagner), appeals from an order of the United States District Court for the Eastern District of New York (Bramwell, J.) that denied its motion for a preliminary injunction sought against appellees, Christopher J. Daggett, as Regional Administrator of the United States Environmental Protection Agency, Region II, and the United States Environmental Protection Agency (EPA). The district court concluded that it lacked subject matter jurisdiction over appellant's claim that challenged on the merits an administrative order issued by the EPA. The district court also rejected appellant's constitutional claims, holding that the fine and penalty provisions of the Comprehensive Environmental Response, Compensation,

and Liability Act, 42 U.S.C. § 9601 *et seq.* (CERCLA), under which provisions the EPA administrative order was issued, comports with due process. This appeal requires us to review these holdings and to rule, in addition, on appellant's request that a preliminary injunction be issued by this Court.

## I FACTS

Wagner distributes animal feed and agricultural chemicals to nurseries and municipalities. Its inventory is stored in a warehouse in Farmingdale, New York. The agricultural chemicals are kept apart from the other goods since many of them pose threats to human health. Some are neurotoxic, possibly carcinogenic, or both.

This segregation policy became a crucial factor in the instant case when on June 1, 1985, Wagner's warehouse was destroyed by fire. According to eyewitness reports, the fire was caused by a lightning bolt that struck appellant's building. The firefighting effort took two different approaches—the section where the toxic chemicals were stored was allowed to burn completely, while in the other areas water was used to fight the flames. The decision to allow the complete combustion of the chemicals was made upon the advice of an expert who believed that this would minimize the extent of the chemicals' spread through runoff water. Despite the firefighting efforts, Wagner's warehouse was totally destroyed and chemicals were carried to surrounding properties by the runoff water.

A cleanup operation under the supervision of the New York State Department of Environmental Conservation (DEC) was immediately commenced by Wagner and several remedial actions were also taken in the ensuing months including draining the catchbasins and removing contaminated debris. Wagner spent several hundred thousand dollars to effectuate this cleanup effort. How effective it was is disputed by the parties. Wagner claims that it cleaned up all the neighboring properties except two where it was denied access, and that it asked the DEC and later the EPA to help it gain entrance to them, but that neither agency was able to help.

The EPA paints a different picture. It became involved at the request of DEC on November 8, 1985—over five months after the fire and chemical spill. In its administrative order, the EPA stated that a potentially dangerous situation existed because properties located in populated areas were still polluted, the contamination sites were unprotected, and the onset of winter threatened to produce conditions that would exacerbate the damage. There was also a possibility that the contamination would leach into the area's groundwater. Although several meetings were held between the EPA and Wagner, progress satisfactory to the EPA was not achieved. On December 31, 1985 it issued an order which required Wagner to undertake certain prompt remedial actions and further required Wagner to develop a "Work Plan" and "Site Operations Plan" leading to complete elimination of contamination.

The EPA issued its order pursuant to CERCLA, 42 U.S.C. § 9606(a), which permits such orders upon a finding "that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance...." The order provided for daily fines of $5,000 for noncompliance, *id.* § 9606(b), and threatened to seek treble damages if the government had to expend its own resources to clean up the site. *Id.* § 9607(c)(3).

Wagner claims that an injunction must issue based on its three challenges. It argues, first, that the district court had subject matter jurisdiction to entertain its challenge to the validity of the EPA order. If the court had exercised jurisdiction, appellant continues, then it would have found that Wagner was excused from having to undertake the proposed chemical cleanup because it could successfully assert the defense that the spill arose from "an act of God." 42 U.S.C. § 9607(b)(1). Wagner next raises two constitutional claims: that the amount that it would be required to

spend to comply with the order represents a taking without due process; and, that the threat of fines and penalties embodied in § 9606(b) and § 9607(c)(3) so penalize appellant for attempting to seek judicial review as to violate *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). We turn first to the proper standard of appellate review and then examine appellant's arguments.

## II STANDARD OF REVIEW

A party who seeks a preliminary injunction must show that it will suffer irreparable harm if the injunction is not granted. *Coca-Cola Co. v. Tropicana Products, Inc.,* 690 F.2d 312, 314 (2d Cir.1982). Beyond this it is also required to prove "either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in its favor." *Id.* at 314–15. Whether the requisite showing has been made is a task properly left to the discretion of the trial court. *Id.* at 315. Our role then is to determine whether there has been an abuse of that discretion or if the result reached is at odds with a rule of equity. *Id.*

■ Wagner was required to show that absent an injunction it would have suffered non-compensable harm, and that this harm arose from the constitutional violations—which if litigated—would either be successful or at least be substantial challenges to the statute's validity. As to its non-constitutional challenge, Wagner would first have to demonstrate that the district court has jurisdiction to entertain its claim, and then it would have to satisfy the requirements of the preliminary injunction standard.

The district court held that it had no jurisdiction to hear claims challenging EPA orders on their merits unless the EPA had initiated an enforcement action under 42 U.S.C. § 9604(a). With regard to the constitutional claims, it found Wagner suffered no irreparable harm and therefore held Wagner's claims to be meritless. We

turn to appellant's contention that the district court had jurisdiction to entertain a challenge to an EPA order on the merits prior to the initiation of an enforcement action.

## III PRE–ENFORCEMENT JUDICIAL REVIEW

■ A presumption exists in favor of jurisdiction by federal courts over the actions of federal administrative agencies. *Block v. Community Nutrition Inst.,* 467 U.S. 340, 104 S.Ct. 2450, 2456, 81 L.Ed.2d 270 (1984). But, "[t]his presumption, like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." *Id.*

It is helpful to examine how CERCLA enforcement actions are prosecuted. These actions are commenced by the EPA for the purpose of obtaining requested relief from a polluting party. The actions may take two forms. Under 42 U.S.C. § 9606(a) when confronted with an environmental disaster, the EPA may "secure such relief as may be necessary to abate such danger or threat, and the district court ... shall have jurisdiction to grant such relief as the public interest and the equities of the case may require." Jurisdiction therefore is expressly conferred on a district court in those instances where the EPA is the moving party. Alternatively, the EPA can itself clean up a spill and then bring an action against the responsible party for the expenses incurred. *Id.* §§ 9604(a), 9607(c)(3), 9631. *See generally State of N.Y. v. Shore Realty Corp.,* 759 F.2d 1032, 1041 (2d Cir.1985); *Aminoil, Inc. v. E.P.A.,* 599 F.Supp. 69, 73 (C.D.Cal.1984). Again, jurisdiction is expressly provided for in the statute. *Id.* § 9607(c)(3).

■ Other courts—concluding that Congress did not provide for pre-enforcement judicial review under CERCLA—have held that subject matter jurisdiction is lacking in federal district court. *See, e.g., Wheaton Industries v. E.P.A.,* 781 F.2d 354, 356–57

(3d Cir.1986); *Lone Pine Steering Committee v. E.P.A.*, 777 F.2d 882, 885–88 (3d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *J.V. Peters & Co., Inc. v. Administrator, E.P.A.*, 767 F.2d 263, 265–66 (6th Cir.1985). These courts believe that Congress envisioned a procedure that permits the EPA to move expeditiously in the face of a potential environmental disaster. To introduce the delay of court proceedings at the outset of a cleanup would conflict with the strong congressional policy that directs cleanups to occur prior to a final determination of the partys' rights and liabilities under CERCLA. These policy concerns extend across the spectrum of possible EPA responses including the response taken here—ordering a private party to remedy a chemical spill. Hence, we agree "unequivocally that pre-enforcement review of EPA's remedial actions ... [is] contrary to the policies underlying CERCLA." *Wheaton Industries*, 781 F.2d at 356. The district court lacks jurisdiction to consider the appropriateness of appellant's act of God defense.

As a corollary to its jurisdictional argument, appellant asks that we consider the record *de novo* and find it entitled to an act of God defense. This argument is premised on the assumption that the district court's conclusion based on a documentary record that it had no jurisdiction was clearly erroneous. Fed.R.Civ.P. 52. If so, such would constitute an abuse of discretion, and if this abuse "is the *predicate* for the trial court's order, an appellate court must reverse...." *Tropicana Products*, 690 F.2d at 316.

Although this circuit has on occasion applied a more thorough review to factual findings when they are drawn from a documentary record than when they are based upon credibility determinations, *see, e.g., State of New York v. Nuclear Reg. Com'n*, 550 F.2d 745, 750–53 & n. 6 (2d Cir.1977), it is plainly inappropriate here where no basis exists for exercising jurisdiction. Therefore, while declining to review the record on the merits in order to decide whether appellant has a meritorious act of God defense, there is jurisdiction to consider claims that CERCLA is unconstitutional. 42 U.S.C. § 9613(b).

## IV DUE PROCESS CHALLENGES

The EPA proceeded against Wagner by issuing an order pursuant to § 9606(a) requiring it to expend additional resources to cleanse completely the area surrounding its warehouse. The holding that Wagner cannot contest the validity of this order until an enforcement action is initiated by the EPA, places Wagner in a situation where it has two options—it can comply with the order, or it can refuse to comply and risk the imposition of fines and penalties. We deal first with Wagner's contention that the fines and penalties that it might incur were it to refuse to comply and challenge the order are so heavy as to dissuade it from seeking judicial review. Relying on *Ex Parte Young* and its progeny, Wagner asserts the statute is unconstitutional because procedural due process is not satisfied.

*Ex Parte Young*, established that mandatory penalties incurred because a party has chosen to seek judicial review are unconstitutional where "the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation...." 209 U.S. at 147, 28 S.Ct. at 449. "The constitutional requirement is satisfied by a statutory scheme which provides an opportunity for testing the validity of statutes or administrative orders without incurring the prospect of debilitating or confiscatory penalties." *Brown & Williamson Tobacco Corp. v. Engman*, 527 F.2d 1115, 1119 (2d Cir.1975), *cert. denied*, 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976). One way of ensuring that a plaintiff is not faced with such unconstitutional penalties is to require that no penalty be imposed where a challenge was brought in good faith. *Oklahoma Operating Co. v. Love*, 252 U.S. 331, 338, 40 S.Ct. 338, 340, 64 L.Ed. 596 (1920) ("[A] permanent injunction should ... issue to restrain enforcement of

penalties accrued *pendente lite,* provided that it also be found that the plaintiff *had reasonable ground to contest* them as being confiscatory.") (emphasis added). *Accord Reisman v. Caplin,* 375 U.S. 440, 446–47, 84 S.Ct. 508, 512–13, 11 L.Ed.2d 459 & n. 6 (1964); *see also Wagner Elec. Corp. v. Thomas,* 612 F.Supp. 736, 742–45 (D.Kan.1985) (interpreting *Ex Parte Young* and *Reisman* ).

■ Without deciding the exact boundaries of the *Ex Parte Young* line of cases, it is plain that there is no constitutional violation if the imposition of penalties is subject to judicial discretion, *see United States v. Reilly Tar & Chemical Corp.,* 606 F.Supp. 412, 417 (D.Minn.1985); *cf. Brown & Williamson Tobacco Corp. v. Engman,* 527 F.2d at 1121 & n. 8 (noting "the limitation of judicial discretion upon the penalties imposed"), and the enforcement provisions contain a good faith exception. Both § 9606(b) and § 9607(c)(3) contain permissive language, that is to say, fines "may" be awarded and liability for treble damages "may" exist. Each section further mandates that while the penalties accrue from the time of noncompliance, collection is only possible after a judicial hearing. Since awarding the fines and penalties is discretionary and they may be imposed only after a judicial hearing, obviously that discretion must rest with the judiciary.

Finally, other courts that have considered whether a good faith requirement exists before a penalty is exacted have found such a requirement. *Wagner Elec. Corp.,* 612 F.Supp. at 743–45; *Reilly Tar & Chemical Corp.,* 606 F.Supp. 418–21. *But see Aminoil, Inc.,* 599 F.Supp. at 73 (no good faith defense available). The foundation for a good faith defense is discernible in the legislative history. For example, the bill's draftsman, Senator Stafford, stated: "It would certainly be unfair to assess punitive damages against a party who for good reason believed himself not to be the responsible party." *Reilly Tar & Chemical Corp.,* 606 F.Supp. at 420 (citing 1 *Legislative History,* 770–71). The Senator

continued, "If the orders or expenditures were not proper, then certainly no punitive damages should be assessed or they should be proportionate to the *demands of equity." Id.* There is no logical reason for limiting a good faith defense solely to the imposition of penalties and not to extend it to fines under § 9606(b).

■ Whether a good faith defense exists to a § 9606(b) action for fines appears to be an open question. Section 9606(b) authorizes a district court to award fines against "[a]ny person who *willfully* violates, or fails or refuses to comply with, any order of the President under subsection (a)...." (emphasis added). The key rests with the word "willful" which traditionally is synonymous with bad faith. For example, in *Reisman v. Caplin,* the relevant tax statute permits the imposition of a fine when an individual " 'neglects to appear or to produce.' " 375 U.S. at 446, 84 S.Ct. at 512. The government admitted—and the Supreme Court accepted as "sufficient"— the proposition "that noncompliance is not subject to prosecution thereunder when the summons is attached in good faith." *Id.* at 447 & n. 6, 84 S.Ct. at 512 & n. 6. The Court recognized that neglect had been equated with willfulness, and noted that the government agreed "that the section is inapplicable to persons who appear and in good faith interpose defenses as a basis for noncompliance." *Id.* at 447 n. 6, 84 S.Ct. at 512 n. 6. We see no reason to interpret willfulness differently when applying § 9606(b). Assuming the inclusion of the willfulness standard, a good faith defense may be read into § 9606(b). With this final requirement satisfied as to both punitive damages and fines, appellant's *Ex Parte Young* argument fails.

■ Wagner raises a second due process argument. If Wagner complies with the order, it will obviously be costly. Further, if the fire that precipitated the toxic spill was attributable to an act of God, Wagner would not be a "responsible party", 42 U.S.C. § 9607(b)(1), and would be entitled to indemnification. In an ordinary situation a third party would exist who would be

a "responsible party" and Wagner could bring an action against this "responsible party" to recover its damages and costs. But where an act of God defense is successful there is no third party—there is just the EPA and Wagner—and reimbursement from the EPA is doubtful. *See Wagner Elec. Corp.*, 612 F.Supp. at 739 (citing *Aminoil, Inc.*, 599 F.Supp. at 73–74); *Reilly Tar & Chemical Corp.*, 606 F.Supp. at 416 (same). Yet Wagner's claim that the statute is therefore unconstitutional because of the possibility of a wrongful taking of its property fails in light of our holding that it has the protection of a good faith defense prior to the imposition of penalties and fines. Accordingly, due process is satisfied.

## V CONCLUSION

The district court's order denying appellant's motion for a preliminary injunction must be affirmed. It properly held that it lacked subject matter jurisdiction to consider a challenge on the merits to an EPA order before the EPA had initiated an enforcement action. Moreover, the district court also correctly concluded that appellant's constitutional arguments are without merit. Wagner can show no irreparable harm. If it chooses not to comply and relies successfully on its act of God defense, payment is completely avoided. Wagner can take that course of action knowing that neither the fines nor the penalty provisions can be invoked against it, if the district court finds Wagner made its defense in good faith. Nor can Wagner be wrongly forced to fund the ordered cleanup without the availability of judicial relief.

Order affirmed.