**WAGNER SEED CO., INC., Plaintiff,**

v.

**George BUSH, President of the United States; United States Environmental Protection Agency, et al., Defendants.**

Civ. A. No. 88–1922.

United States District Court,
District of Columbia.

April 4, 1989.

---

Frank L. Amoroso, Rhonda S. Kahan, Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., Keith A. O'Donnell, Rivkin, Radler, Dunne & Bayh, Washington, D.C., for plaintiff.

Letitia J. Grishaw, U.S. Dept. of Justice, Land & Natural Resources Div., Environmental Defense Section, Joseph Freedman, Office of Gen. Counsel, U.S. E.P.A., Washington, D.C., Thomas Lieber, U.S. E.P.A., New York City, for defendants.

## OPINION AND ORDER

REVERCOMB, District Judge.

This case involves a claim by plaintiff, Wagner Seed Co., for reimbursement of funds expended by it for an environmental cleanup ordered by defendant United States Environmental Protection Agency ("EPA"). The case turns primarily on an interpretation of section 106(b)(2) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9606(b)(2). The parties each filed dispositive motions; oral argument was heard on December 1, 1988. In this opinion and order, the Court grants defendants' motion to dismiss.

## I. Facts

Wagner Seed stored various agricultural products, including pesticides, at its warehouse in Farmingdale, New York. On June 1, 1985, lightning struck the warehouse, burning it down and releasing various contaminants into the environment. The EPA on December 31, 1985, ordered Wagner Seed to clean up the release.[1] While Wagner was in the process of cleaning up, Congress approved in 1986 the Superfund Amendments and Reauthorization Act (SARA), which amended CERCLA to provide for reimbursement from Superfund to companies who clean up environmental damage pursuant to an EPA order, if the companies are not liable for costs of the cleanup. 42 U.S.C. § 9606(b)(2). There is no liability if the accident was caused by an "act of God." 42 U.S.C. § 9607(b).

After Wagner Seed completed the cleanup to EPA's satisfaction, the company in 1988 petitioned under the new provision for reimbursement of the $2.3 million it expended for the cleanup. The EPA denied the petition, maintaining that because Wagner Seed was already in the process of cleaning up pursuant to an EPA order when the law was enacted, the company was not entitled to reimbursement. This suit followed.

## II. Discussion

The reimbursement provision—section 106(b)(2) of CERCLA—states that "[a]ny person who receives and complies with the terms of any order ... may ... petition ... for reimbursement from the Fund...." 42 U.S.C. § 9606(b)(2). The law clearly covers persons who receive orders from the EPA after the date of enactment, and Wagner Seed does not contend that the law was meant to apply retroactively to those who finished their cleanups before the law was enacted. What is less than clear, however, is whether the provision applies to persons who were in the midst of a cleanup when the law was enacted.

Both sides have made valiant efforts to persuade the Court that it was the clear

---

1. Wagner Seed filed suit to enjoin the EPA from ordering cleanups, arguing that such orders, made pursuant to 42 U.S.C. § 9606(a), were unconstitutional. The United States District Court for the Eastern District of New York denied the motion for a preliminary injunction, and was affirmed by the United States Court of Appeals for the Second Circuit. *Wagner Seed Co. v. Daggett*, 800 F.2d 310 (2d Cir.1986). Wagner Seed then began to clean up the release of the contaminants.

intent of Congress to have the law read in the manner in which they argue it should be read. Wagner Seed argues that if Congress had meant the EPA's interpretation, it would have written the law to apply to "anyone who *will* receive and *will* comply with an order." Plaintiff's Motion at 12. In response, defendants argue that Wagner Seed's interpretation would rewrite the law to give reimbursement to "anyone who receives or received an order." Defendants' Opposition at 3. The Court finds neither syntactical analysis to be persuasive.

Similarly, neither side presents concrete evidence of congressional intent through legislative history.[2] Instead, the parties are reduced to drawing on secondary sources of statutory interpretation—maxims, other laws, etc.—to try to prove their points. Using these aids, the Court concludes that defendants have presented a stronger case, although no single argument on its own is fully persuasive.

■■■ The most persuasive of defendants' statutory construction arguments is based on the rules that a waiver of sovereign immunity is to be construed narrowly, *see, e.g., United States v. King,* 395 U.S. 1, 4–6, 89 S.Ct. 1501, 1502–1503, 23 L.Ed.2d 52 (1969), and that ambiguities concerning such waivers are to be strictly construed in favor of the government. *See, e.g., Library of Congress v. Shaw,* 478 U.S. 310, 318, 106 S.Ct. 2957, 2963, 92 L.Ed.2d 250 (1986). Because Superfund is a trust fund established in the United States Treasury, *see* 26 U.S.C. § 9507(a), statutes that permit actions to take money from Superfund must be subject to the usual rule about construing sovereign immunity ambiguities in favor of the United States. *See Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999,

1006, 10 L.Ed.2d 15 (1963) (all suits to take money from the public treasury implicate sovereign immunity).

Somewhat less persuasive is defendant's argument, based on the maxim of *expressio unius est exclusio alterius,* that "when Congress wanted to make a provision of [CERCLA] retroactive, it knew how to do so." Defendant's Motion at 19. Defendants argue that there is no ambiguity regarding congressional intent toward cleanups in progress when § 106(b)(2) was enacted because Congress has often specified when claims may be made under CERCLA for funds expended in the past. *See, e.g.,* 42 U.S.C. § 9604(c)(5)(C) (credit may be extended to states that expended funds "after January 1, 1978, and before December 11, 1980"). Although the Court believes that this argument weighs in defendants' favor, it cannot conclude from this argument alone that Congress *intended* § 106(b)(2) not to apply to cleanup operations in progress when the provision was enacted.

Defendants also point out that the stated purpose of reimbursement provision was to provide an additional incentive for companies to undertake cleanups and comply with cleanup orders. *See* H.R.Rep. No. 253, 99th Cong., 1st Sess. Pt. I, 139–40 (1985), U.S.Code Cong. & Admin.News 1986, p. 2835 (statement of EPA administrator); 132 Cong.Rec. H9624 (daily ed. Oct. 8, 1986) (statement of Rep. Eckart). Defendants argue that because there would no need to give an incentive to those who already had started cleanup at the time the section was enacted, the section should not be held to apply to Wagner Seed. The Court notes, however, that the purpose of the law could have been advanced by en-

---

**2.** Defendants cite a statement by Rep. Dennis Eckart, a sponsor of the bill that included 106(b)(2), on the floor of the House of Representatives. In describing § 106(b)(2), Rep. Eckart said that the new provision would provide incentives to companies to undertake cleanups, and that "effective after the date of enactment of these amendments, a party who receives an order can begin the work of environmental cleanup while preserving its right to raise objections in a subsequent proceeding." 132 Cong. Rec. H9624 (daily ed. Oct. 8, 1986).

The Court is hesitant to give much weight to the statement of a single representative on the floor of the House, especially when the statement does not directly address the question before the Court. Rep. Eckart's statement does seem to make clear that the law was not meant to be retroactive to cleanups already completed; it is not, however, conclusive enough evidence to convince the Court that Congress intended the reimbursement statute *not* apply to cleanups in progress when the law enacted.

couraging those already cleaning up to complete the job thoroughly and without cutting corners. In sum, the Court finds this "purpose of the statute" argument to be less than dispositive.

Next, while the Court agrees with defendants that statutes affecting substantive rights should not be presumed to apply retroactively, *see, e.g., Bennett v. New Jersey,* 470 U.S. 632, 638–41, 105 S.Ct. 1555, 1559–61, 84 L.Ed.2d 572 (1985), the Court is not convinced that Wagner Seed's proposed interpretation would result in a "retroactive" application of the statute. Although applying § 106(b)(2) to Wagner Seed would reimburse the company in part for funds expended before the law went into effect, Wagner Seed clearly was not entitled to petition for reimbursement under § 106(b)(2)(A) until it completed its cleanup, which was *after* the reimbursement section was enacted. *See, e.g., Reynolds v. United States,* 292 U.S. 443, 448–49, 54 S.Ct. 800, 803, 78 L.Ed. 1353 (1934) (statute allowing veterans not to have certain medical bills charged against them held *not* to be retroactive in this case merely because some of the expenses were incurred before the statute went into effect). In addition, the primary reason for avoiding retroactive application of statutes—interference with antecedent expectations, *see Bennett,* 470 U.S. at 640, 105 S.Ct. at 1560—is not particularly strong in this case. In sum, the Court does not find the "retroactivity" argument persuasive.

■ On the other hand, while defendants' statutory construction arguments may not be conclusive, the Court believes that they are stronger than Wagner Seed's. Beyond relying on the words of the statute, Wagner Seed points out correctly that a "remedial" statute is to be construed in favor of those whom it was intended to protect. *See, e.g., Bell v. Brown,* 557 F.2d 849, 853 (D.C.Cir.1977). However, while it is clear that § 106(b)(2) was intended to provide for reimbursement to *some* persons who expend funds for cleanups, it also un-

deniably does *not* provide reimbursement to any persons who finished cleanups before the provision was enacted. Whether the provision applies to those in the middle, such as Wagner Seed, is not answered by the argument that Wagner Seed is the *sort* of person that the provision was meant to help.

Finally, the Court notes that when it is confronted with a question concerning construction of an ambiguous statute and an interpretation of that statute by the agency to whom administration is entrusted, the question for the reviewing court is whether the agency's interpretation is based on a permissible construction. *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). If the agency's interpretation is one of more than one possible "reasonable" interpretations, the court must defer to the agency. *See id.* Indeed, even if the Court's interpretation would be different from the agency's, the Court must nonetheless uphold the agency's interpretation, as long as it is a reasonable one. *Id.* at 844, 104 S.Ct. at 2782. Deference to an agency's interpretation is required both because the agency holds the expertise on subjects within its domain *and* because policy choices should be made by the political branches, not the courts. *Chevron,* 467 U.S. at 864–66, 104 S.Ct. at 2792–93; *Michigan Citizens for an Independent Press v. Thornburgh,* 868 F.2d 1285, 1293 (D.C.Cir.1989).

■ Examining the EPA's interpretation of § 106(b)(2), the Court concludes that the interpretation must be upheld because it is a reasonable interpretation of an ambiguous statute. It was reasonable for the EPA to decide not to apply § 106(b)(2) to Wagner Seed, which had received the cleanup order from the EPA and had completed a substantial amount [3] of the cleanup before the statute was enacted. The EPA noted correctly that a chief purpose of the provision, as expressed in the congressional

---

3. Defendants maintain that Wagner Seed had expended 98 percent of its cleanup expenses before § 106(b)(2) went into effect. The Court, however, does not take this factor into account in examining the reasonableness of the EPA's decision, which also apparently did not depend on the extent to which Wagner Seed had completed its cleanup.

reports, was to provide incentives for companies to undertake cleanups and comply with EPA orders. *See* H.R.Rep. No. 253, 99th Cong., 1st Sess. Pt. I, 139–40 (1985) (statement of EPA administrator); 132 Cong.Rec. H9624 (daily ed. Oct. 8, 1986) (statement of Rep. Eckart). While this incentive could have had some effect on those already in the process of cleaning up, it was reasonable for the EPA to decide to interpret the statute as not to apply to those companies that had already agreed to engage in cleanup.

When presented with the ambiguous reimbursement provision, the EPA was forced to decide where to make the cut-off—either apply it to all companies who made petitions after the law went into effect, or just to those companies who received EPA orders after the provision was enacted. The latter choice did not eviscerate the statute—it simply placed those who were in the process of cleaning up in the same boat as those who completed cleanup before § 106(b)(2) was enacted. The EPA's decision to make the cut-off where it did—not allowing reimbursement to companies who were already cleaning up when § 106(b)(2) was enacted—was a reasonable interpretation of the statute.

In sum, the Court finds that defendant's motion to dismiss should be granted, both because the EPA's statutory interpretation of an ambiguous statute was reasonable and, alternatively, because the tenets of statutory interpretation weigh in favor of defendants' proposed statutory construction.

Accordingly, it is

ORDERED that plaintiff's motion for summary judgment is DENIED; it is further

ORDERED that defendants' motion to dismiss is GRANTED.