DICO, INC., Plaintiff,

v.

Bruce M. DIAMOND, as Director, Office of Waste Programs Enforcement, United States Environmental Protection Agency; Carol M. Browner,[1] as Administrator of the United States Environmen-

1. Because Carol M. Browner has succeeded William K. Reilly as Administrator of the United States Environmental Protection Agency, she is

tal Protection Agency; United States Environmental Protection Agency; William J. Clinton,[2] as President of the United States; and the United States of America, Defendants.

Civ. No. 4-92-70375.

United States District Court,
S.D. Iowa, C.D.

May 17, 1993.

automatically substituted as a defendant. Fed. R.Civ.P. 25(d)(1).

2. Because William J. Clinton has succeeded George Bush as President of the United States, he is automatically substituted as a defendant. Fed.R.Civ.P. 25(d)(1).

Michael M. Sellers, Des Moines, IA, Charles F. Lettow, Washington, DC, for plaintiff.

Christopher D. Hagen, U.S. Atty., Des Moines, IA, Vicki A. O'Meara, Karen L. Egbert, Environment & Natural Resources Div., Marc Smith, Gen. Litigation Section, Dept. of Justice, Paul Bangser, Environmental Protection, Office of Gen. Counsel, Washington, DC, for defendants.

## MEMORANDUM OPINION, RULINGS AND ORDER OF DISMISSAL

VIETOR, District Judge.

Plaintiff Dico, Inc. ("Dico") brings suit against defendants Bruce M. Diamond, as Director of the Office of Waste Programs Enforcement, United States Environmental Protection Agency, et al., seeking reimbursement of costs it incurred, and will incur in the future, pursuant to an administrative order by the United States Environmental Protection Agency ("EPA" or "the EPA"), in cleaning up a contaminated groundwater site in Des Moines, Iowa (the Des Moines Trichloroethylene ("TCE") site). Dico's complaint[3] alleges that it is entitled to reimbursement under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601–9675 (Counts I–III); the Due Process Clause of the Fifth Amendment to the United States Constitution (Count IV); and the Takings Clause of the Fifth Amendment to the United States Constitution (Count V). Defendants move for summary judgment on Counts I–III and to dismiss Counts IV and V. Dico resists. Dico moves for partial summary judgment on Counts I–III and for summary judgment on Counts IV and V. Defendants resist. The motions are submitted.

### Motions for Summary Judgment

### Summary Judgment Standard

■■■ Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). To preclude the entry of summary judgment, the nonmovant must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Continental Grain Co. v. Frank Seitzinger Storage, Inc.*, 837 F.2d 836, 838 (8th Cir.1988). Rule 56(e) requires the nonmoving party to go beyond the pleadings and by affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Johnson v. Schopf*, 669 F.Supp. 291, 295 (D.Minn.1987). "In designating specific facts, 'the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment' because Rule 56(c) requires 'that there be no *genuine* issue of *material* fact.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 272 (8th Cir. 1992) (citation omitted) (emphasis in origi-

---

3. Dico originally filed its complaint on June 10, 1992. On July 1, 1992, Dico filed an amended complaint; in referring to "the complaint" the court is referring to the amended complaint.

nal). The quantum of proof that the non-moving party must produce is not precisely measurable, but it must be "enough evidence so that a reasonable jury could return a verdict for the nonmovant." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986); *Johnson,* 669 F.Supp. at 295–96.

On a motion for summary judgment, the court views all the facts in the light most favorable to the nonmoving party, and gives that party the benefit of all reasonable inferences that can be drawn from the facts. *United States v. City of Columbia, Mo.,* 914 F.2d 151, 153 (8th Cir.1990); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990).

## Statutory Background

CERCLA was enacted in 1980 "to bring order to the array of partly redundant, partly inadequate federal hazardous substances cleanup and compensation laws," *New York v. Shore Realty Corp.,* 759 F.2d 1032, 1040 (2d Cir.1985), and to address "the growing problem caused by the large number of uncontrolled 'inactive hazardous waste sites,'" *United States v. Northeastern Pharmaceutical & Chemical Co.,* 579 F.Supp. 823, 838 (W.D.Mo.1984) (citation omitted), *aff'd in part & rev'd in part,* 810 F.2d 726 (8th Cir.1986), *cert. denied,* 484 U.S. 848, 108 S.Ct. 146, 98 L.Ed.2d 102 (1987). CERCLA was designed to ensure "the prompt cleanup of hazardous waste sites." *J.V. Peters & Co. v. Administrator, EPA,* 767 F.2d 263, 264 (6th Cir.1985) (citation omitted). To accomplish this goal, CERCLA grants EPA the authority,[1] upon a determination that there is an actual or threatened release of a hazardous substance, to either "take direct response

action to clean up a site and later seek reimbursement from the polluters, or to require the 'responsible parties' to conduct a cleanup." *Bethlehem Steel Corp. v. Bush,* 918 F.2d 1323, 1324 (7th Cir.1990).

To "encourage potentially responsible parties to conduct a cleanup expeditiously and postpone litigation about responsibility to a later time, Congress amended CERCLA, effective October 17, 1986, to give any party that 'receives and complies' with a cleanup order the right to petition for reimbursement." *Id.* at 1324 (referring to the Superfund Amendment and Reauthorization Act of 1986, 42 U.S.C. § 9606(b)(2)(A)).[5] To obtain reimbursement, a petitioner must establish "by a preponderance of the evidence that it is not liable for response costs under section 9607(a) of this title and that costs for which it seeks reimbursement are reasonable in light of the action required by the relevant order." 42 U.S.C. § 9606(b)(2)(C). "If the [EPA] refuses to grant all or part of a [section 9606(b)(2) petition for reimbursement], the petitioner may within 30 days of receipt of such refusal file an action ... in the appropriate United States district court seeking reimbursement." *Id.* § 9606(b)(2)(B).

## Facts

For purposes of the summary judgment motions the following facts are undisputed. In September 1983, the Des Moines TCE site was placed on the National Priorities List.[6] On July 21, 1986, EPA issued an Administrative Order under 42 U.S.C. section 9606(a) to Dico directing the cleanup of hazardous substances at the Des Moines TCE site. The order states that "[a]ll reports, plans, specifications, and schedules submitted pursuant to

---

4. The court notes that most of the authority granted under CERCLA is expressly granted to the President; however, the President has delegated much of his authority under CERCLA to the EPA. *See* Exec. Order No. 12,580, *reprinted in* 42 U.S.C. § 9615 note.

5. The full text of this subsection provides that: Any person who receives and complies with the terms of any order issued under subsection (a) of this section may, within 60 days after completion of the required action, petition the [EPA] for reimbursement from the Fund for the reasonable costs of such action, plus interest.

42 U.S.C. § 9606(b)(2)(A).

6. The National Contingency Plan sets forth procedures and standards for responding to releases of hazardous substances, pollutants, and contaminants. 42 U.S.C. § 9605. The National Contingency Plan was required to include criteria for determining priorities among releases or threatened releases for purposes of taking remedial action and removal. *Id.* § 9605(8)(A). Based on these criteria, the EPA maintains a National Priorities List representing the sites subject to CERCLA-funded remedial action. *See id.* § 9605(8)(B).

this Order are, upon approval by EPA, incorporated into this Order." The order also states that "[t]his Order is effective immediately upon receipt by [Dico] and all times for performance of actions pursuant to this order shall be calculated from that date." On September 8, 1986, Dico submitted to EPA "a listing of those portions of the order which it believes are not appropriate or could hinder the implementation" of the response actions required by the order.

On October 17, 1986, the Superfund Amendment and Reauthorization Act of 1986 ("SARA") became effective, creating in CERCLA section 106(b)(2), 42 U.S.C. § 9606(b)(2), a new cause of action for reimbursement of cleanup costs to a non-liable party who "receives and complies with the terms of any [administrative] order . . . ."

In letters dated October 21, October 24, and November 28, 1986, the EPA addressed Dico's suggested changes to the response action required by the order; the EPA agreed to some, but not all, of the changes suggested by Dico. On July 8, 1988, Dico petitioned EPA for reimbursement of costs it incurred in carrying out the response action required by the order.[7] On May 11, 1992, EPA issued a final decision denying Dico's petition for reimbursement on the basis that the reimbursement provision does not apply to parties who received orders under section 9606(a) prior to the date of enactment of SARA.

## Discussion

The fighting issue in this case revolves around the CERCLA reimbursement provision, 42 U.S.C. § 9606(b)(2). Briefly stated, defendants contend that the reimbursement amendment applies only to those who both receive an order and comply with it after the effective date of the amendment. Defendants further assert that because Dico received the order before SARA's effective

date, SARA's provisions are not applicable. Dico, on the other hand, argues that it is a party who has "receive[d] and complie[d]" with an order and is therefore entitled to claim reimbursement.

## Count I

In Count I of its complaint Dico contends that the EPA's interpretation of section 9606(b) contravenes the language and history of the provision. Dico argues that the plain language and the relevant legislative history of section 9606(b)(2) indicates that it is entitled to reimbursement, and that giving effect to the plain meaning of section 9606(b)(2) avoids the need to resolve a constitutional question and promotes Congress's purposes. Dico also argues that EPA's construction of section 9606(b)(2) is not entitled to judicial deference and section 9606(b)(2) should not be narrowly construed as a waiver of sovereign immunity. Defendants contend EPA's interpretation of the "receives and complies" language of section 9606(b) is entitled to judicial deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Defendants argue further that EPA's prospective-only interpretation of the reimbursement provision is consistent with the statutory language, history and purpose, and with the principle of narrowly interpreting waivers of sovereign immunity.

It is Dico's position that the court should not defer to EPA's construction of CERCLA's reimbursement provision because it creates a judicial cause of action under sections 9606(b)(2)(B) & (E), and courts should not defer to the administrative construction of a statute creating a judicial right of action. Dico relies on *Adams Fruit Co. v. Barrett,* 494 U.S. 638, 110 S.Ct. 1384, 108 L.Ed.2d 585 (1990), where the Supreme Court held that the Department of Labor's interpretation of a federal worker protection statute was not entitled to deference.[8]

---

7. Dico seeks reimbursement in the amount of $764,134.08. The petition itself seeks $532,-453.54; Dico has supplemented the petition on three occasions seeking additional amounts of $86,222.19, $70,074.39, and $75,383.96. Dico also seeks reimbursement for future response costs.

8. The Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801 *et seq.,* creates a private right of action for "any person aggrieved by a violation" of the statute. In *Adams Fruit,* employees sued their employer for injuries they allegedly suffered due to the employer's intentional violation of the motor vehicle safety provisions of the AWPA. *Adams*

Unlike the situation in *Adams Fruit,* however, the EPA *is charged* with administering CERCLA. *Wagner Seed Co. v. Bush,* 946 F.2d 918, 920 (D.C.Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1584, 118 L.Ed.2d 304 (1992). "[I]nterpretation of the 'receives and complies' requirement of § [9606](b)(2)(A) is the [EPA's] responsibility in the first instance." *Wagner Seed,* 946 F.2d at 923. In deciding whether to grant a petition for reimbursement, the EPA is "making a decision about the best allocation of the scarce resources made available by the Congress for the purpose of providing an incentive for clean-ups that might not otherwise be undertaken by a potentially responsible party." *Id.* Because EPA necessarily had to rule upon the meaning of the terms of section 9606(b)(2)(A) in response to Dico's petition for reimbursement, the EPA "can hardly be rebuffed, when it later asserts its claim in court to deference under *Chevron,* for trying to 'bootstrap' itself into an area in which it has 'no jurisdiction.'" *Id.* (citation omitted). In this court's view, *Chevron* does apply to the instant case.

According to the Supreme Court,

[w]hen a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an adminis-

trative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted). The Court has "long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer." *Id.* at 844, 104 S.Ct. at 2782. If the agency's action is " 'a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute,' " the agency's action should be upheld " 'unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.' " *Id.* at 845, 104 S.Ct. at 2783 (citation omitted).

Applying *Chevron,* the Courts of Appeals for the Seventh and District of Columbia Circuits have found that deference to EPA's interpretation of section 9606(b) is required and that EPA's interpretation is reasonable and should be upheld. *See Wagner Seed,* 946 F.2d at 924–25; *Bethlehem Steel Corp. v. Bush,* 918 F.2d at 1329. Those courts thoroughly addressed the arguments raised by the parties in the instant case concerning the statutory language and legislative history of section 9606(b), *Wagner Seed,* 946 F.2d at 924–25; *Bethlehem Steel,* 918 F.2d at 1326–29, and application of the doctrine of narrowly construing waivers of sovereign immunity, *Bethlehem Steel,* 918 F.2d at 1329. *See also Bethlehem Steel Corp. v. Bush,* 736 F.Supp. 945 (N.D.Ind.1989) (subsequent history omitted); *Gary Steel Supply Co. v. Reagan,* 711 F.Supp. 471 (N.D.Ill.1989); *Wagner Seed Co. v. Bush,* 709 F.Supp. 249 (D.D.C.1989) (sub-

*Fruit,* 494 U.S. at 640, 110 S.Ct. at 1386. The employer, relying on the position of the Department of Labor, argued that no private right of action existed because the state workers' compensation law provided the exclusive remedy. *Id.* at 649, 110 S.Ct. at 1390. The Supreme Court rejected this argument, holding that the Department of Labor's interpretation of the statute was not entitled to deference. *Id.* at 650, 110 S.Ct. at 1391. The Court stated that

Congress clearly envisioned, indeed expressly mandated, a role for the Department of Labor

in administering the statute by requiring the Secretary to promulgate *standards* implementing AWPA's motor vehicle provisions. This delegation, however, does not empower the Secretary to regulate the scope of the judicial power vested by the statute. Although agency determinations within the scope of delegated authority are entitled to deference, it is fundamental "that an agency may not bootstrap itself into an area in which it has no jurisdiction."

*Id.* (citations omitted) (emphasis in original).

sequent history omitted). The court agrees with the Seventh and District of Columbia Circuit Courts and adopts their reasoning. Because Congress did not clarify whether the CERCLA reimbursement provision is available to a person who received a clean-up order prior to enactment of section 9606(b), the court is constrained to defer to the EPA's reasonable interpretation of the statute to deny reimbursement.[9]

Finally, Dico argues that it is entitled to reimbursement under section 9606(b)(2) for its costs of response incurred to address contamination it did not cause.[10] Dico contends it is entitled to judgment on the issue of liability and on its right to reimbursement because there is no genuine dispute as to the facts establishing that it has no legal liability with respect to the so called "northern plume" of contamination.[11]

Whether a factual dispute exists in this case over who is liable for the northern plume of contamination is not material to disposition of the motions for summary judgment. The court agrees with defendants' position that this case does not call for judicial review of the substance of Dico's reimbursement claim under the standard set forth in section 9606(b)(2)(C), but rather for judicial review of the statutory prerequisites for bringing such a claim, i.e., whether Dico is "a person who receive[d] and complie[d]" with an order under section 9606(b)(2)(A). See Wagner Seed, 946 F.2d at 921.[12]

## Count II

■ In Count II of the complaint, Dico contends that the administrative order was not enforceable until October 21, 1986, because the Due Process Clause of the Fifth Amendment to the Constitution of the United States requires that the EPA first provide a party with an opportunity to be heard before an order can be enforceable. In Dico's view, although the order was issued on July 21, 1986, it was not enforceable until the EPA had heard, and responded on October 21, 1986 to, Dico's objections.

Nothing in the language of section 9606 suggests that enforceability is the standard by which a party's entitlement to reimbursement is determined or that such orders are not enforceable until EPA has responded to objections, and Dico has not provided the court with any authority to support this position.

9. Dico argues that this case is distinguishable from the above cited cases because in those cases the parties subject to cleanup orders from the EPA had all complied with the orders, at least in part, prior to enactment of CERCLA's reimbursement provision. The parties in this case dispute whether Dico began to comply with the order before October 17, 1986. This dispute is of no consequence, however, because EPA's interpretation of the provision denies reimbursement to any party who has received an order prior to enactment of the reimbursement provision. See Wagner Seed, 946 F.2d at 925 (EPA's interpretation of the statute denies reimbursement "to anyone who was unfortunate enough to have received a clean-up order before Congress made provision for reimbursement").

10. "There shall be no liability .. for a person otherwise liable" if "the release or threat of release of a hazardous substance and the damage resulting therefrom were caused solely by ... an act or omission of a third party other than an employee or agent of the defendant...." 42 U.S.C. § 9607(b).

11. Dico relies in part on Local Rule 14(h) which provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Defendants filed a statement of undisputed material facts in support of their motion for summary judgment, but did not file "a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried" in response to Dico's motion for partial summary judgment. See also Fed.R.Civ.P. 56(e) (the responding party must set forth specific facts showing that there is a genuine issue for trial). Local Rule 14(h) also provides, however, that the "statement of material facts as to which the moving party contends that there is no issue to be tried" shall include "specific reference to those parts of the pleadings, depositions, answers to interrogatories, admissions, and affidavits which support such contentions." Dico's statement of undisputed facts contains no such specific reference.

12. The court also notes that under CERCLA, the government need not sue every potentially responsible party; "[t]he government is free to proceed against any potentially responsible person, either individually or in conjunction with other potentially responsible persons." Farmland Indus., Inc. v. Morrison–Quirk Grain Corp., 987 F.2d 1335, 1340 (8th Cir.1993).

To the extent Dico is arguing that the Due Process Clause is implicated under Count II because "the penalties specified in CERCLA so burdened Dico's access to judicial review of the Order that it was for practical purposes unavailable," the court disagrees. Although pre-enforcement judicial review is precluded by 42 U.S.C. section 9613(h), the court may review the merits of an order in an action by EPA to enforce a cleanup order or to recover a penalty for failure to comply with an order, because a "sufficient cause defense" is available to a party during such an action.[13] The availability of the "sufficient cause defense" satisfies the requirements of due process. *See Wagner Seed Co. v. Daggett*, 800 F.2d 310 (2d Cir.1986); *Solid State Circuits, Inc. v. EPA*, 812 F.2d 383, 387 (8th Cir.1987) (because "sufficient cause defense" is available, treble damages provision passes constitutional muster); *United States v. Reilly Tar & Chemical Corp.*, 606 F.Supp. 412, 417–21 (D.Minn.1985).

> [I]t is plain that there is no constitutional violation if the imposition of penalties is subject to judicial discretion.... Both § 9606(b) and § 9607(c)(3) contain permissive language, that is to say, fines "may" be awarded and liability for treble damages "may" exist. Each section further mandates that while the penalties accrue from the time of noncompliance, collection is only possible after a judicial hearing. Since awarding the fines and penalties is discretionary and they may be imposed only after a judicial hearing, obviously that discretion must rest with the judiciary.

*Wagner Seed Co. v. Daggett*, 800 F.2d at 316 (citations omitted).

**Count III**

■ The CERCLA reimbursement provision provides that a person who "receives and complies with the terms of any order" may petition for reimbursement. *See* 42 U.S.C. § 9606(b)(2)(A). Under Count III of its complaint Dico contends that "the modified Order was received on October 21, 1986, after enactment of SARA, and it was the modified Order [Dico implemented]." Dico argues that "the terms" of the order were modified after October 17, 1986, and therefore, it is entitled to reimbursement because a final was not "received" until after October 17, 1986.

It is undisputed that the EPA agreed to some, but not all, of the changes to the July 21, 1986 order suggested by Dico. The parties disagree over the significance of the changes that were made. In defendants' view, the changes to the order are technical changes only and do nothing to alter Dico's obligation to comply with the order. According to Dico, the changes modify the most basic elements of the measures required by the order. Whether the changes are technical or substantive, or a mixture of both, the changes do not change the basic requirement of the July 21 order that Dico clean up a specific groundwater contamination site.

It is this court's conclusion that EPA's agreement to certain changes in the order did not alter Dico's obligation to comply with the order or EPA's right to enforce the order.[14] The July 21, 1986 order indicates that the northern plume area was to be addressed by the cleanup Dico was to undertake.[15] Also, it is undisputed that the July 21, 1986 order states that it is "effective immediately upon receipt," that "all times for

---

**13.** A "person who is liable for a release or threat of release of a hazardous substance" may be liable for punitive damages if the party "fails without sufficient cause" to comply with the order. 42 U.S.C. § 9607(c)(3). "Any person who, without sufficient cause, willfully violates, or fails or refuses to comply" with an order may be subject to fines. *Id.* § 9606(b)(1).

**14.** Dico's argument under Count III appears to be related to its arguments under Count II concerning due process and enforceability of the order. The court rejected those arguments under Count II and likewise does so here.

**15.** As previously noted, CERCLA does not provide for preenforcement judicial review of an order to cleanup a site. *See Wagner Seed v. Daggett*, 800 F.2d at 314–15. However, if Dico believed it was being ordered to cleanup contamination for which it was not liable, it could have refused to comply with the order. The EPA would then have brought an enforcement action, and Dico could have asserted its defense at that time. *See Bethlehem Steel Corp. v. Bush*, 736 F.Supp. at 951.

performance of actions pursuant to this Order shall be calculated from that date," and "[a]ll reports, plans, specifications, and schedules submitted pursuant to this Order are, upon approval by EPA, incorporated into this Order." Finally, as defendants correctly point out, if EPA's orders do not become enforceable, or a party's compliance obligations do not begin to run, until the party is satisfied with the terms of the order, EPA would lose the ability to ever enforce such orders. This would contravene the primary purpose of CERCLA, which is to ensure the prompt cleanup of hazardous waste sites. *J.V. Peters*, 767 F.2d at 264; *cf. Solid State Circuits*, 812 F.2d at 387 ("[r]ecognizing the grave consequences arising from delays in cleaning up hazardous waste sites, Congress gave the EPA authority to direct clean-up operations prior to a final judicial determination of the rights and liabilities of the parties affected"). Dico "received" the order prior to the effective date of the reimbursement provision, October 17, 1986.

## Motion to Dismiss

In Counts IV and V of the complaint, Dico alleges that if it is not entitled to reimbursement under 42 U.S.C. § 9606(b), reimbursement is required under the Due Process Clause [16] and Takings Clause [17] of the Fifth Amendment to the United States Constitution.[18] Defendants argue that this court lacks subject matter jurisdiction over Counts IV and V. According to defendants, the Due Process Clause "does not provide an avenue for obtaining money damages from the United States," and under the Takings Clause,

this court has jurisdiction to hear claims for money damages only insofar as the claims do not exceed $10,000.00.

■ Dico's complaint alleges that this court has subject matter jurisdiction pursuant to 42 U.S.C. § 9606(b)(2)(B), 28 U.S.C. § 1331(a), and 28 U.S.C. § 1346(a)(2). The United States and its agencies must, of course, consent to be sued, and waivers of sovereign immunity are " 'construed strictly in favor of the sovereign' ... and not 'enlarge[d] beyond what the language requires.' " *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (citations omitted). Although section 1331 grants jurisdiction to the district courts for matters raising federal questions, it does not constitute a waiver of sovereign immunity and does not create any substantive right enforceable against the United States for money damages. *Hagemeier v. Block*, 806 F.2d 197, 202–03 (8th Cir. 1986), *cert. denied*, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987); *DeVilbiss v. Small Business Administration*, 661 F.2d 716, 718 (8th Cir.1981). And, "while [section 1346(a)(2) ] does provide jurisdiction over and waive the sovereign's immunity as to claims within its purview, it creates no substantive right enforceable against the United States for money damages." *Wardle v. Northwest Inv. Co.*, 830 F.2d 118, 122 (8th Cir.1987) (citing *United States v. Mitchell*, 463 U.S. 206, 216, 103 S.Ct. 2961, 2967, 77 L.Ed.2d 580 (1983)). Dico has not identified a statutory or constitutional provision which creates a

---

16. Dico contends it is entitled to reimbursement under the Due Process Clause because CERCLA bars pre-enforcement judicial review of orders issued under 42 U.S.C. § 9606(a) and because failure to comply with an order may result in substantial fines and punitive damages, thereby depriving it of adequate post-deprivation of property remedies.

17. Dico alleges that EPA's order requiring plaintiff to undertake certain monitoring and remediation activities, on its own property and the property of others, and expending money for such activities, "constitutes a taking of property within the meaning of the Fifth Amendment."

18. The court notes that on July 2, 1992, Dico filed a complaint in the United States Court of Federal Claims, based on the same facts as the

instant case, seeking money damages in excess of $10,000 based on the Due Process Clause and Takings Clause of the Fifth Amendment. On February 25, 1993, the Court of Federal Claims dismissed Dico's complaint without prejudice for lack of jurisdiction, based on 28 U.S.C. § 1500, which provides:

The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

*Dico, Inc. v. United States*, No. 92–453C (Fed.Cl. Feb. 25, 1993).

cause of action for money damages resulting from an alleged due process violation. The "Little Tucker Act," 28 U.S.C. § 1346(a)(2), provides, in part, that "[t]he district courts shall have original jurisdiction, concurrent with the United States Claims Court, of: ... [a]ny other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress...." Dico argues that this court has jurisdiction over its Constitutional claims for "declaratory relief," and, in support of its position cites caselaw for the proposition that a suit against the United States falls within the court's general federal question jurisdiction (28 U.S.C. § 1331), as long as there is no claim for money damages. Dico acknowledges that a plaintiff may not use a suit for equitable relief as a disguise for a money damage claim, but argues that its "equitable action is not a 'disguised' money damage claim because the relief it seeks has 'prospective independent significance,' " citing *Minnesota v. Heckler*, 718 F.2d 852 (8th Cir.1983).[19]

"A party may not circumvent the Claims Court's exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States." *Eagle–Picher Indus., Inc. v. United States*, 901 F.2d 1530, 1532 (10th Cir.1990) (citation omitted). "The test for determining if a case belongs in the Claims Court is whether or not 'the "prime objective" or "essential purpose" of the complaining party is to obtain money from the federal government.' " *Id.* at 1352 (citation omitted).

Dico's complaint, in the prayer for relief, asks the court to "Order that defendants reimburse Dico pursuant to [42 U.S.C. § 9606(b) ] for $764,134.08 in response costs related to the northern plume and such additional costs related to the northern plume as Dico has incurred between June 1991 and the date of judgment...." Dico further requests that the court "[d]eclare that, to the extent reimbursement for past and future response costs is not available under [42 U.S.C. § 9606(b) ], defendants are obliged to provide reimbursement under the Fifth Amendment to the Constitution of the United States." In its memorandum Dico reiterates this request, stating "[b]y this response, Dico opposes EPA's motion ... and seeks summary judgment declaring that, to the extent that [42 U.S.C. § 9606(b)(2) ] does not provide such reimbursement, EPA is obliged to provide reimbursement under the Fifth Amendment to the Constitution of the United States." Because Dico's prime objective is to force the government to reimburse Dico for response costs, the United States Court of Federal Claims has exclusive jurisdiction over Counts IV and V.[20]

## Rulings and Order

The cross-motion for partial summary judgment on Counts I–III and summary judgment on Counts IV and V by plaintiff Dico, Inc., filed November 4, 1992, is **DENIED**. The motion for summary judgment on Counts I–III and to dismiss Counts IV and V by defendants Bruce M. Diamond, etc., et al., filed September 30, 1992, is **GRANTED**.

**IT IS ORDERED** that Counts I–III of plaintiff's amended complaint, filed July 1, 1992, be DISMISSED with prejudice, and

**19.** In *Minnesota v. Heckler*, the court held that "[i]f the declaratory or injunctive relief a claimant seeks has significant prospective effect or considerable value apart from merely determining monetary liability of the government, the equitable relief sought is paramount and the district court may assume jurisdiction over the nonmonetary claims." *Minnesota v. Heckler*, 718 F.2d at 858. The court noted that

[a] split of authority exists on the issue whether the district court can assume jurisdiction over equitable claims based on the same facts as monetary claims when the Claims Court also has the power to grant the nonmonetary relief.

Some courts, including [the Eighth Circuit], have found the equitable jurisdiction of the district court concurrent with the Claims Court when the nonmonetary relief is deemed "primary."

*Id.* at 858 n. 11. Dico argues that "[b]ecause EPA's Order forces Dico to treat the northern plume for years to come, Dico's claim for declaratory relief manifestly satisfies the *Heckler* test."

**20.** Because the court will grant defendants' motion to dismiss Counts IV and V it need not address Dico's motion for summary judgment on those Counts.

Counts IV & V be DISMISSED without prejudice.