**In re CHATEAUGAY CORPORATION, Reomar, Inc., and The LTV Corporation, et al., Debtors.**

**LTV STEEL COMPANY, INC., Plaintiff,**

v.

**UNION CARBIDE CORPORATION, Dana Corporation, Motorola, Inc., Avco Corporation, Aerospace Metals, Inc., Flowline Corporation, Sherritt Inc., and John Does 1–250, Defendants.**

Nos. 86 B 11270 (BRL) to 86 B 11334 (BRL), 86 B 11402 (BRL), 86 B 11464 (BRL) and 95 Civ. 4644 (MBM).

United States District Court,
S.D. New York.

March 18, 1996.

Edmund M. Emrich, Cherise Wolas Kasica, Craig B. Cooper, Kaye, Scholer, Fierman, Hays & Handler, New York City, for Plaintiff.

Robert A. White, Murtha, Cullina, Richter and Pinney, Hartford, CT, for Aerospace Metals, Inc.

Laura B. Ahearn, Wilmer, Cutler & Pickering, Washington, DC, for AVCO Corporation.

Michael P. Last, Jeffrey R. Porter, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., Boston, MA, for Dana Corporation.

David Reis, Thorp, Reed & Armstrong, Pittsburgh, PA, for Flowline Corporation.

MUKASEY, District Judge.

LTV Steel Company ("LTV"), formerly a bankruptcy debtor, has sued in this district's Bankruptcy Court for a judgment declaring that LTV's potential liability under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601 *et seq.*, in an action pending in the Western District of Pennsylvania, has been discharged. Four of the defendants to LTV's adversary proceeding, Aerospace Metals, Inc., Avco Corporation, Dana Corpora-

tion and Flowline Corporation, have moved pursuant to 28 U.S.C. § 157(d) (1988) to withdraw the order of reference to the Bankruptcy Court. LTV opposes that motion. For the reasons that follow, the motion to withdraw the reference is denied.

## I.

In July 1986, LTV and 66 of its affiliates filed a reorganization petition pursuant to Chapter 11 of the Bankruptcy Code. (Mot. to Withdraw Reference ¶ 1) The Bankruptcy Court set a bar date of November 30, 1987 for creditors to file claims, but none of the defendants in this action filed claims against LTV before that date. (Zalenski Aff. Ex. A) On May 27, 1993, the Bankruptcy Court confirmed the Plan of Reorganization and LTV emerged from bankruptcy. (*Id.* Ex. B)

Four years after LTV filed for bankruptcy, in June 1990, the Environmental Protection Agency ("EPA") brought a CERCLA action against 24 named defendants, including all of the defendants in the present action, seeking monetary and other relief for the actual or threatened release of hazardous substances in Pulaski, Pennsylvania (the "Metcoa site"). (*Id.* ¶ 3) That action, entitled *United States v. Pesses,* No. 90–654, is now pending before Judge Gustave Diamond and a magistrate judge of the United States District Court in the Western District of Pennsylvania.

To manage the large and complex CERCLA litigation, the magistrate judge issued a case management order dividing the case into the following three phases: (1) liability, (2) cost-related issues, and (3) cross-claims and third-party claims. (White Aff. Ex 1 p. 4) Pursuant to this schedule, the Court first ruled that the "Scrapper/Dealer Defendants," a group that included several federal agencies, were "responsible persons" under CERCLA, 42 U.S.C. § 9607(a). *United States v. Pesses,* 794 F.Supp. 151, 153 (W.D.Pa.1992). Shortly thereafter, many of the defendants, including the federal agencies, entered into a consent decree with the EPA to repay the government's clean-up costs. But in November 1994, Judge Diamond rejected the consent decree on the ground that the proponents of the decree failed to establish that the allocation of responsibility to the federal agencies was fair and reasonable under the circumstances.

*United States v. Pesses,* No. Civ. A. 90–0654, 1994 WL 741277, *14 (W.D.Pa. Nov. 7, 1994).

The consent decree was rejected in part because the first case management order was unworkable: there was virtually no way to complete phase two—assessing the cost of clean-up, before completing phase three— determining the validity of the cross-claims and third-party claims. Accordingly, the magistrate judge revised the case management order to require: (1) immediate impleader of third parties, (2) discovery on the liability of those third parties, (3) appointment of an allocation consultant to create a volumetric ranking list, and (4) establishment of a committee to allocate liability. (White Aff. Ex. 3 pp. 5–7)

Pursuant to this new schedule, in February 1995, the defendants filed a third-party complaint against 228 additional parties, including LTV, seeking costs from potentially responsible parties ("PRPs") who had arranged for the treatment and disposal of hazardous material at the Metcoa site. (*Id.* Ex. 2) On April 11, 1995, the defendants amended the third-party complaint to add a count seeking a declaratory judgment that LTV's bankruptcy discharge did not bar the CERCLA adversary proceeding for two reasons: (1) LTV had not provided sufficient notice to these defendants of its bankruptcy in 1986–87, and (2) these defendants did not hold "claims" subject to bankruptcy discharge. (*Id.* Ex. 6 ¶¶ 17–29)

LTV did not answer the third-party complaint, but instead initiated the present action on May 23, 1995 seeking both a declaratory judgment that is the opposite mirror image of the one sought in Pennsylvania—a judgment that any liability it may owe to the defendants under CERCLA has been discharged by its bankruptcy, and a permanent injunction to stop the Pennsylvania litigation against it. LTV obtained an *ex parte* temporary restraining order enjoining the defendants from prosecuting the Pennsylvania action. (Mot. to Withdraw Reference ¶ 5) Four of the defendants to that action, Aerospace Metals, Avco, Dana and Flowline, now seek to withdraw the bankruptcy court reference so that the action may be heard in an Article III court.

## II.

After the Supreme Court ruled in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 81, 102 S.Ct. 2858, 2876, 73 L.Ed.2d 598 (1982), that the Bankruptcy Reform Act of 1978 unconstitutionally vested Article I courts with "the essential attributes of the judicial power," Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984 to correct the infirmities flagged by the Court in *Marathon*, and to create a workable and constitutional system for bankruptcy administration. *See* 1 Collier on Bankruptcy ¶ 3.01[2][a] (15th ed. 1995). Unlike its predecessor, § 241(a) of the Bankruptcy Reform Act of 1978, which granted broad jurisdiction to the bankruptcy court, the 1984 legislation limits bankruptcy court jurisdiction by giving the district court discretion to refer a case to bankruptcy court, and by authorizing the district court to withdraw a reference under appropriate circumstances. Specifically, 28 U.S.C. § 157(d) provides that:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d) (1988).

■ Aware of Congress's concern that the second sentence of § 157(d), the provision for mandatory withdrawal, might become an "escape hatch" through which most bankruptcy matters might fall, courts have interpreted that sentence narrowly and have explained that the statute mandates withdrawal only when "substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990) (citations omitted), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). Withdrawal is not required when consideration of non-Code law entails only the straightforward application of settled law to the facts of a particular case. *Id.* Withdrawal is required when the court

will be called upon to make a significant interpretation of a non-Code statute, *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir.1991), when non-Code issues dominate Code issues, *In re Texaco, Inc.*, 84 B.R. 911, 921 (S.D.N.Y.1988), or when the non-bankruptcy federal law that governs the case significantly and materially conflicts with the relevant bankruptcy provisions. *American Tel. & Tel. Co. v. Chateaugay Corp.*, 88 B.R. 581, 588 (S.D.N.Y.1988).

The ultimate issue in the adversary proceeding here is whether LTV's potential CERCLA liability to the defendants has been discharged by its bankruptcy. Nested within that broad question are the following sub-issues: (1) when defendants' CERCLA claim arose; (2) whether the CERCLA actions constitute "claims" under the Bankruptcy Code; (3) whether the notice of the bar date provided by LTV to these defendants provided constitutional due process; and (4) whether LTV's action should be dismissed pursuant to the "first-filed rule."

■ The present case does not mandate withdrawal of the bankruptcy reference. Although defendants rely on several cases from this district that have held that the timing of a CERCLA claim against a bankrupt alleged polluter presents an issue compelling withdrawal of a reference, *see, e.g., American Tel. & Tel.*, 88 B.R. at 588, *Carter Day Indus., Inc. v. United States Envtl. Protection Agency*, 67 B.R. 709, 712 (S.D.N.Y.1986), *United States v. Johns–Manville Corp.*, 63 B.R. 600, 602 (S.D.N.Y.1986), a recent Court of Appeals case in this Circuit establishes a different rule. In *In re Chateaugay Corp.*, 944 F.2d 997 (2d Cir.1991), the Second Circuit explained that accrual of the EPA's CERCLA claims against bankrupt parties is determined by bankruptcy law, and does not require interpretation of the substantive provisions of CERCLA. *Id.* at 1002. The Second Circuit reasoned that Congress intended the Bankruptcy Code "to overcome many provisions of law that would apply in the absence of bankruptcy," and that if Congress had intended CERCLA to limit the Bankruptcy Code, it could have amended the Code to achieve environmental objectives. *Id.* The Court then held that the EPA's suit

674

against LTV for response costs was a bankruptcy "claim" because it was based on a pre-petition release or threatened release of hazardous substances, and that that claim was discharged by LTV's bankruptcy. *Id.* at 1004–06.

Since *Chateaugay,* the only district court to address a motion to withdraw a reference in a case concerning the discharge of CERCLA liability has denied the motion, reasoning that because determination of the accrual of a CERCLA claim is based exclusively on the Bankruptcy Code, the underlying proceeding does not involve substantial and material non-Code issues, and therefore withdrawal is not mandatory. *Revere Copper & Brass, Inc. v. Acushnet Co.,* 172 B.R. 192, 196–98 (S.D.N.Y.1994). The Court recognized that the facts of *Revere Copper* were somewhat different from those of *Chateaugay* because the claim was brought by a private party rather than by the EPA, but concluded that although the specification announced in *Chateaugay* of when a CERCLA claim accrues— at the time of actual or threatened release of hazardous substances—might not apply to cases brought by private parties, the rationale of that case should apply to public and private claimants alike.

As in *Revere Copper,* the sole CERCLA issue in the present case is when defendants' claims arose, and I too read *Chateaugay* to mean that that inquiry must be resolved in accordance with the Bankruptcy Code's definition of "claim." After the court that hears this case determines when defendants' claims accrued, it must then determine whether those claims were discharged, a fundamental question of bankruptcy law that is best resolved by a bankruptcy court.

Defendants try to resist this conclusion by arguing that the adversary proceeding raises the substantive CERCLA issue of "when the release of the hazardous substances took place." (Mem. in Support of Mot. for Withdrawal of Reference pp. 7–8) That, however, is a factual issue that must be analyzed under the Bankruptcy Code to determine its legal significance. Indeed, if the accrual rule announced in *Chateaugay* does apply to private parties, the relevant fact issue will be not only when release occurred, but also when it was threatened. Had the underlying proceeding raised substantive CERCLA is-

sues, such as whether LTV is at all liable for the toxic site and its clean-up, the inquiry might be different, but defendants here have not identified any other CERCLA issues in this case.

 The other issues presented in the adversary proceeding, although not dependent on the Bankruptcy Code, also do not require withdrawal. Whether LTV complied with due process in providing notice to its creditors of the bar date set by the Bankruptcy Court is a procedural issue well within the competence of the Bankruptcy Court. Even if, as movants suggest, the notice issue rises above statutory interpretation to the level of a constitutional claim, the Bankruptcy Court is equipped to decide it. A bankruptcy court is just as bound by the Constitution as any Article III court, and is well situated to decide whether the notice provided to implement its own bar date complied with established rules of due process. Allowing bankruptcy courts to decide these issues in no way diminishes the authority conferred by Article III of the Constitution, because a district court may review that decision *de novo.* The statute contemplates mandatory withdrawal not when the Bankruptcy Court is called upon to make a routine interpretation of its own notice requirements, or whether that notice complies with the Constitution, but when it is called upon to interpret a federal statute with which it has little familiarity. Moreover, the particular constitutional issue here is one that could almost always be raised by a party seeking withdrawal of the reference. Holding that that issue mandates withdrawal would defeat Congress's purpose when it created the bankruptcy courts, and would transform § 157(d) into an escape hatch through which numerous cases would fall.

 Defendants' invocation of the "first-filed rule" also does not compel withdrawal of the reference. That doctrine applies when identical actions are pending in separate federal courts, and requires the second action to yield to the first, absent special circumstances. *Exxon Corp.,* 932 F.2d at 1025. Special circumstances exist when the first action is a blatant example of forum shopping—*e.g.,* when one party notifies another of

its intent to sue, and the second party makes a preemptive strike by seeking a declaratory judgment in the forum of its choice, *Federal Ins. Co. v. May Dep't Stores Co.*, 808 F.Supp. 347, 350 (S.D.N.Y.1992), or when the balance of convenience tilts toward the second action. *Mueller Indus., Inc. v. Sharon Steel Corp.*, No. 92 Civ. 1235, 1992 WL 116314 *3 (S.D.N.Y. May 22, 1992). Otherwise, the first forum, which will have devoted more energy to the case, presumptively is favored.

■ Unlike complex federal statutes such as ERISA, RICO, the Internal Revenue Code, or even CERCLA, the first-filed rule is simple and relatively easy to apply. If the defendants move to dismiss on that basis, the bankruptcy court can decide that motion as skillfully as this or any other district court would, especially given the possibility that the bankruptcy itself might constitute a "special circumstance" warranting retention of the second action and a stay of the first. Accordingly, the first-filed rule alone does not constitute a "substantial and material consideration" of non-Code law of the sort that justifies mandatory withdrawal. None of the issues that have been identified by the parties as likely to be raised in the adversary proceeding, either individually or together, requires mandatory withdrawal of the reference to the bankruptcy court.

### III.

■ Even if withdrawal is not mandatory, a district court may withdraw the bankruptcy reference "for cause shown." 28 U.S.C. § 157(d) (1988). The Second Circuit has held that when deciding whether "cause" exists to withdraw a reference, a district court first should consider whether the claim is a "core" or "non-core" bankruptcy claim. *Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1101 (2d Cir.1993), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 1418, 128 L.Ed.2d 88 (1994).

That distinction was first made by a plurality of the Supreme Court in *Marathon*. *See supra* p. 673. There, the plurality held that a pre-petition breach of contract action against a Chapter 11 debtor was not encompassed within the core of bankruptcy jurisdiction. 458 U.S. at 71, 102 S.Ct. at 2871–72. The plurality explained that while the restructuring of debtor-creditor relationships is central to bankruptcy jurisdiction, the adjudication of state-created private rights is not. *Id.*

In response to *Marathon*, Congress codified the core/non-core distinction in 28 U.S.C. § 157(b). That section states that:

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 . . . .

28 U.S.C. § 157(b)(1) (1988), and then sets forth a nonexhaustive list of 15 types of core proceedings. 28 U.S.C. § 157(b)(2) (1988). The Second Circuit has instructed that the statute must be construed against the backdrop of *Marathon* and with the nature of the particular proceeding in mind. *In re Best Products Co.*, 68 F.3d 26, 30 (2d Cir.1995).

■ Core matters are ones with which the bankruptcy court has greater familiarity and expertise, subject to appellate review by the district court. 28 U.S.C. § 157(b)(1) (1988). Conversely, non-core matters are those in which the district court is more proficient, and which the district court reviews *de novo*. 28 U.S.C. § 157(c)(1) (1988). On a motion to withdraw, allowing core matters to remain in the bankruptcy court, and withdrawing non-core matters, promotes efficiency and uniformity of bankruptcy law. Courts in this Circuit construe "core" jurisdiction broadly to honor the intent of Congress and to avoid overwhelming the district courts with bankruptcy matters. *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1398–99 (2d Cir.), *vacated on other grounds*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated*, 924 F.2d 36 (2d Cir.), *cert. denied*, 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991).

LTV relies on several of the categories in 28 U.S.C. § 157(b)(2) to characterize the present action as "core." It argues that the adversary proceeding fits within subsections:

(A) matters concerning the administration of the estate.

(I) determinations as to the dischargeability of particular debts,

(L) confirmations of plans, and,

(O) other proceedings affecting the liquidation of the assets of the estate or the

adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2) (1988). LTV argues further that even if the proceeding does not fit within one of the categories listed in the statute, it qualifies as a core proceeding because it "involves issues unique to the bankruptcy process." (Pl.Mem. in Opp'n to Mot. to Withdraw p. 19)

▆▆▆ As a general matter, the principal issue here—whether LTV's potential CERCLA liability has been discharged by a bankruptcy—turns on the bankruptcy laws, and goes to the essence of bankruptcy jurisdiction because it raises the question of whether a debt has been discharged, the discharge of debts being among the essential and defining functions of a bankruptcy proceeding. *See In re Brooks Fashion Stores, Inc.,* 124 B.R. 436, 441 (Bankr.S.D.N.Y.1991) (holding that a post-confirmation proceeding to declare that tax claim had been discharged was "core"). The former debtor here asks the court to rule that the confirmation of its reorganization plan bars movants' claims. That request, and the Second Circuit's holding in *Chateaugay* that even a CERCLA claim requires application of the Bankruptcy Code's definition of a "claim," place the proceeding here within the core of bankruptcy jurisdiction.

▆▆▆ Moreover, the proceeding here is markedly different from proceedings characterized as non-core in *Marathon.* There, a plurality of the Supreme Court held it unconstitutional for a bankruptcy court to adjudicate the merits of a state law contract dispute brought by the debtor. Here, the underlying dispute focuses on liability under a federal statute, and the narrow issue before the bankruptcy court is only whether that liability, if it exists at all, has been discharged by LTV's bankruptcy. That narrow issue presents a question of bankruptcy law, because as noted, the discharge of debts is a defining function of a bankruptcy proceeding. Whether or not a debt has been discharged is no less a bankruptcy question after the plan for reorganization has been confirmed, than it was before.

▆▆▆ The conclusion that the present proceeding is "core" is confirmed when one examines the examples of core proceedings listed in the statute. At least three seem to describe this proceeding. For example, the dischargeability of LTV's potential CERCLA liability falls within § 157(b)(2)(I), a determination as to the dischargeability of a particular debt. The proceeding indisputably concerns dischargeability, and the claim asserted falls within the statutory meaning of a "debt." The Bankruptcy Code defines "debt" as "liability on a claim," 11 U.S.C. § 101(12) (1988), and states that "claim" means

right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured.

11 U.S.C. § 101(5)(a) (1988). Although 28 U.S.C. § 157, the statute defining core and non-core proceedings, does not specifically state that its terms are defined by the Bankruptcy Code, a word used to describe the heart of bankruptcy jurisdiction should mean the same thing as the same word in the Bankruptcy Courts' organic statute. Moreover, the Supreme Court has confirmed that "debts" that may be discharged in bankruptcy are not limited to sums certain owing on a contract. *Ohio v. Kovacs,* 469 U.S. 274, 275, 105 S.Ct. 705, 706, 83 L.Ed.2d 649 (1985).

Movants state conclusorily that the present proceeding is not encompassed within the "dischargeability of debts" category because that category "refers to actions under § 523 and refers to the 'type' of debt involved." (Rep. Mem. by Moving Parties pp. 18–19) Presumably movants are referring to § 523 of Title 11 of the United States Code which lists a host of "exceptions to discharge," 11 U.S.C. § 523 (1988), and which is often invoked in non-dischargeability proceedings. But nothing in § 157(b)(2)(I) limits itself to or even refers to 11 U.S.C. § 523, and defendants have not cited, nor have I found any case or legislative history that so confines that section. Instead, the language of the statute refers to the discharge of debts generally.

Two other listed categories also seem to fit the proceeding. Section 157(b)(2)(A)—"matters concerning the administration of the estate"—pertains to matters that are integral, if not essential to the administration of the estate, but does not apply to matters that are only tangential to the administration of the estate. *In re Ben Cooper*, 896 F.2d at 1398–1400. Section 157(b)(2)(A) applies to proceedings initiated after confirmation of the reorganization, so long as the proceeding concerns issues that relate back to the debtor's pre-confirmation conduct. *Compare In re Best Products*, 68 F.3d at 26 (post-confirmation proceeding to enforce a pre-petition subordination agreement is a matter concerning the administration of the estate) *and In re Best Products Co.*, No. 94 Civ. 1564, 1996 WL 19030, *2 (S.D.N.Y. Jan. 18, 1996) (denying post-confirmation motion to withdraw on basis of Second Circuit's finding that proceeding was core) *and In re U.S. Lines, Inc.*, 169 B.R. 804, 820–21 (Bankr.S.D.N.Y.1994) (post-confirmation suit for post-petition breach of insurance contract entered into pre-petition is a matter concerning the administration of estate because insurance policies are estate property), *with In re Pan American School of Travel, Inc.*, 47 B.R. 242, 244 (Bankr. S.D.N.Y.1985) (proceeding to enjoin post-confirmation conduct of the debtor had no nexus to administration of the estate) *and In re J. Baranello & Sons, Inc.*, 149 B.R. 19, 26 (Bankr.E.D.N.Y.1992) (debtor's post-confirmation proceeding to enforce a pre-petition state court judgment not a matter concerning administration of the estate); *Bernheim v. Chubb Ins. Co.*, 160 B.R. 42, 46 (D.N.J.1993) (debtor's action to recover on insurance policy obtained and allegedly breached post-confirmation does not concern administration of the estate).

Here, there is a substantial nexus between LTV's request for a declaratory judgment and injunctive relief and the administration of the bankrupt estate. The proceeding raises questions about the relationship of LTV's confirmed plan of bankruptcy to a lawsuit initiated by the EPA post-petition and pre-confirmation, and extended by third-party plaintiffs post-confirmation, concerning LTV's alleged role in a toxic dump. These questions could result in the imposition of millions of dollars of liability against the newly reorganized LTV, could impact distributions to its other bankruptcy creditors, and thus cut to the essence of bankruptcy administration. *See also In re Peerless Plating Corp.*, 70 B.R. 943, 945 (W.D.Mich.1987) (pre-confirmation determination of CERCLA liability to the EPA is a matter concerning the administration of the estate). Finally, the catch-all category of § 157(b)(2)(O), which applies to proceedings that affect the adjustment of the debtor-creditor relationship, also captures this case. In sum, the action for a declaratory judgment as to the bankruptcy discharge of LTV's potential CERCLA liability is a core proceeding.

After making the core/non-core determination, the court considers judicial economy, delay and cost to the parties, uniformity of bankruptcy administration, forum shopping, and other related factors to determine if permissive withdrawal is warranted. *Orion Pictures*, 4 F.3d at 1101. Because the primary issues in LTV's action for a declaratory judgment and injunctive relief are at the core of bankruptcy jurisdiction, efficiency and uniformity both will be furthered by denial of the motion to withdraw. The Bankruptcy Court's mastery of both the facts and law relating to LTV's protracted reorganization will allow it to digest the materials and resolve this dispute more efficiently than would a court completely new to the case. The issues raised in LTV's action and in the defendants' proposed notice defense are inextricably related to the substantive and procedural aspects of the underlying bankruptcy.

The pendency of the CERCLA case in the Western District of Pennsylvania does not strengthen the motion to withdraw. The adversary proceeding here entails only a determination of the dischargeability of LTV's potential CERCLA liability to the defendants to this particular suit, some of whom overlap with the parties in Pennsylvania, and some of whom, namely the "John Doe" defendants, may not. If the Bankruptcy Court determines that that liability has been discharged, its ruling merely instructs the Pennsylvania Court not to consider LTV when apportioning liability among producers, treaters and

disposers of hazardous waste at the Metcoa site. If the Bankruptcy Court instead determines that LTV's potential liability has not been discharged, the Pennsylvania court then may evaluate the existence and extent of LTV's liability. LTV's suit for a declaratory judgment and injunctive relief has nothing to do with the merits of defendants' CERCLA claims against LTV, but only with the threshold question of whether those claims may be enforced if they later are deemed valid. That LTV agreed in a settlement to litigate its liability to the EPA in the Western District of Pennsylvania further illustrates the difference between issues of liability and issues of discharge, and the appropriate forum for each. Liability issues will be decided by the district court in Pennsylvania, and bankruptcy discharge issues by the Bankruptcy Court here, absent removal of the case on another ground, such as the first-filed rule.

Finally, it bears mention that each side in this proceeding has cast allegations of forum shopping at the other. LTV contends that the defendants seek to withdraw the reference so that they can transfer the case to Pennsylvania where they will bask in the Third Circuit's creditor-friendly, narrow definition of a bankruptcy "claim," *see Avellino & Bienes v. M. Frenville Co.,* 744 F.2d 332, 336–37 (3d Cir.1984), *cert. denied,* 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985) (holding that a bankruptcy claim does not arise until a right of action matures under applicable non-bankruptcy law), or at least dodge the Second Circuit's debtor-protective, expansive definition of "claim" announced in *Chateaugay.* By contrast, movants contend that they sought relief in the only logical forum and that LTV is the true forum shopper, because it has sought shelter in the arms of its bankruptcy caretaker. When, as here, each side has run to its favorite courthouse, "the courts should be concerned with what the interests of justice require and not with who won the race." *National Patent Dev. Corp. v. American Hosp. Supply Corp.,* 616 F.Supp. 114, 118 (S.D.N.Y.1984) (Weinfeld, J.); *see also McCrory Corp. v. 99 Cents Only Stores,* 160 B.R. 502, 507 (S.D.N.Y.1993) (noting that when both sides have engaged in forum shopping, that inquiry is not dispositive). Here, the interests of justice, as defined by 28

U.S.C. § 157(d) and embellished by judicial gloss, require that the motion to withdraw the reference be denied.

\* \* \*

For the reasons explained above, the defendants' motion to withdraw the reference is denied.

SO ORDERED.